## T. J. QUIGLEY v. PENN. S. V. R. CO.

ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY
COUNTY.

Argued February 2, 1888—Decided October 1, 1888.

1. The location of a street or alley on a borough plan, with the view of
being regularly opened thereafter, of itself gives to a railroad company
no power to take and occupy the same in the construction of its road-
way, without compensation to the owner of the land.
2. For injuries done to the owner by such taking and occupation of an
unopened street or alley, even though no excavation or embankment be
made in the construction of the roadway, jurisdiction is given for the
assessment of damages by the report of viewers to be appointed under
the statute.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and
WILLIAMS, JJ.; TRUNKEY and GREEN, JJ., absent.

No. 137 July Term 1887, Sup. Ct.; court below, No. 24
March Term 1884, C. P.

On December 15, 1883, The Pennsylvania Schuylkill Valley
R. Co., incorporated under the general railroad act of Febru-
ary 19, 1849, P. L. 83, for the construction of a railroad from
Philadelphia to Pottsville, presented its bond with a petition
for the filing and approval thereof, setting forth that it had
located and marked out a railroad and desired to enter upon
and take and occupy, for the purpose of constructing and
operating its railroad thereon, "all the right, title, interest,
claim and demand of Thos. J. Quigley of, in and to a certain
private railroad siding situate in the borough of Conshohocken,"
and the ground upon which the same rested, in so far as the
same was located within certain lines and descriptions, con-
taining 288 square feet. The same day, notice having been
given, the bond was filed and approved.

On March 7, 1884, the company having entered upon and
occupied the land thus bounded, and in so doing having taken
away and destroyed, as was claimed, the private siding which
for a number of years had been owned and used by Mr. Quig-
ley in connection with a coal yard, flour and feed store, and

Charge of Court below.

as a means of access to the Philadelphia, Germantown &
Norristown Railroad, operated as a part of the Reading sys-
tem, upon the petition of Mr. Quigley viewers were appointed
for the assessment of his damages, who filed an award in favor
of the petitioner for $4,628, from which award on April 26,
1884, the company appealed.

At the trial, on May 26, 1886, of the issue framed upon said
appeal, near the close of the evidence it was made to appear,
that the portion of land occupied by the company, defendant
in the issue, had been laid out on the borough map as a portion
of Washington street, by the commissioners appointed to lay
out the streets, but it had never been regularly opened, though
open for anybody who chose to pass over it.   The defendant
then raised the point that no recovery could be had in the
statutory proceeding, as there was no evidence that any
change had been made in the grade of the street.   The case
was then re-opened, and after testimony relating to the subject
of a change in grade was adduced, the case closed on the evi-
dence.

The court, BOYER, P. J., answered the points presented by
the defendant and charged the jury, inter alia:

For the recovery of damages against a railroad company there
are several laws which differ in their application according to
the injury which is done.   The law provides, that where pro-
perty is actually taken there may be an application made to
court by either the railroad company or the person whose pro-
perty it has taken, for the appointment of seven disinterested
freeholders, who value the property and who make report to
court, but from their award of damages there can be an appeal
by either side, and then the case comes, as this has, before a
jury in court for the final determination.   But that law applies
only where land is actually taken by the occupation of the rail-
road, except in one particular case.   [When a railroad is con-
structed upon a street in a borough, damages in this way can
be assessed only where there is a change in the grade of the
street by excavation or embankment, and where such excava-
tion or embankment causes the injury to the property.] [1]   In
such a case as that, although no land is actually taken by the
railroad company, they are still responsible in damages for the
injury to the market value of the property abutting upon the

street, so far as it is caused by any excavation or embankment in the street. The law reads as follows: " That whenever any company shall locate its road in and upon any street or alley in any city or borough, ample compensation shall be made to the owners of lots fronting upon such street or alley, for any damages they may sustain by reason of any excavation or embankment made in the construction of such road, to be ascertained as other damages are authorized to be ascertained by this act." Therefore injuries to property, although the property itself be not taken, are to be compensated for in the manner which I have explained to you; but where the injury is not caused by an embankment or an excavation made in the construction of the railroad, there, although property may be injured which fronts upon the street, this particular remedy does not apply. The person injured, however, still has his remedy. Before the late constitution was framed, a person, as the law formerly stood, who had property abutting upon a public street, but none of which was taken by the railroad, could recover no damages against a railroad company which constructed its road directly in front of the property, so long as it did not take any part of the land of the sufferer, however much he may have been injured by the railroad. But the present constitution provides that no property can even be injured without compensation by any corporation which constructs a railroad in front of it upon the street on which it abuts; no property can be *injured* though not *taken* for public use without adequate compensation; and therefore, those who are thus injured have their remedy by an ordinary action at law. But they cannot proceed in this way unless they can show that there has been a change of grade in the street upon which their property abuts, which causes the injury either by an excavation or embankment. Therefore, whether you will enter upon the calculation of damages which have been suffered in this case, will depend upon whether you find that the injury to the property of the plaintiff has been caused by any excavation or embankment made by the railroad company on Washington street. [It is said on the part of the plaintiff, a siding leading into his property was destroyed. That siding was destroyed because it was necessarily constructed upon an embankment made by the owner of that property, leading from the Reading railroad by an elevated track on to his prem-

ises. That was an artificial embankment in the street, and so far as it was an artificial embankment made in the street for this purpose, I charge you that no excavation of it, although it did destroy the siding, would be the subject of damages in this case, because this was a regularly laid out public street, and although it had not been opened by lawful authority, no property owner along it had the right under the law to build upon it, or to put any obstruction there which would interfere with the ultimate opening of the street, or, if he did so, he could not recover damages because of their abatement afterwards. The laying out of the street, according to the law under which it was laid out, was notice to all persons owning property fronting upon it that it was a public street, and that at some future time it would be opened and used as such; and therefore every man who put any obstruction into it, did so at his own risk, and he could hold no person responsible for its removal afterwards, when the space where it stood came to be used as a lawful public street. Therefore I instruct you, that you must find, apart from the excavation made through this artificial embankment, that the grade of Washington street in front of the plaintiff's property was changed either by an excavation or by an embankment; and, if the general level of the street along there, as it originally existed, was not altered, but, after the completion of the railroad, the level was about as it existed before the artificial bank which supported the plaintiff's siding was constructed, there can be no recovery of damages in this case. Nor would an infinitesimal elevation or depression of the street avail the plaintiff. It must be a substantial alteration by excavation or embankment, and it must have been of a character so as to cause the injury alleged to have been sustained by the plaintiff. I leave the facts entirely to you. If you can find in this case evidence to justify you in finding such change of grade, and further that that change of grade caused the injury to the plaintiff's property, then, and then only, will you take into consideration the question of what his damages amount to. If you find they were not caused by such change of grade, your verdict will be for the defendants; and the plaintiff will be left to pursue the other remedies which the law affords him.] [2] For he is entitled, if not in this form, in another form of action, to recover for all the damages which he has sus-

tained. If you find that the injuries to his property were caused in the manner in which I have explained, by excavation or embankment, apart from the removal of the artificial embankment which the owner of the property himself placed in the street, you will award the plaintiff such damages as you find he has sustained, measured by the depreciation in the market value of his property, with interest upon it from the 15th of September, 1883.

The defendant asks me to charge you upon the following points :

1. The plaintiff having laid his siding on a public street, is a trespasser, and the defendant company being authorized to occupy said street with its railroad, had a lawful right to remove said siding without any liability to the plaintiff therefor.

Answer : The plaintiff cannot be considered a trespasser in the ordinary sense, because he constructed the embankment in question for his business purposes in a street laid out but not to be regularly opened for public travel until future legal proceedings ; but he could only maintain his obstruction until the street was lawfully opened for public travel. Until then he could only maintain it subject to removal whenever the public exigencies required its abatement. When the railroad acquired its right to occupy the street, its excavation through the plaintiff's artificial embankment did not make the defendant responsible for damages ; and for that alone the plaintiff cannot recover in this action.[3]

4. Unless the defendant company made an excavation or embankment in the public street fronting the plaintiff's property, there can be no recovery in this suit.

Answer: This is affirmed.[4]

The jury returned a verdict in favor of the defendant. A motion for a new trial was refused and judgment was entered, when the plaintiff took this writ specifying as error :

1, 2. The parts of the charge embraced in [ ] [1] [2]

3, 4. The answers to defendant's 1st and 4th points.[3] [4]

*Mr. Charles Hunsicker*, for the plaintiff in error :

1. The siding and connection with the Reading road was the property of the plaintiff, as was the land on which it was con-

structed. The road called Washington street was an unopened street laid out on the map of the town. The land, therefore, belonged to the plaintiff, and it could not be taken from him, or his use of it abridged, until compensation therefor had been paid or secured. The company, in its petition, described this siding as the property of the plaintiff, and the land as the land of the plaintiff. The court has jurisdiction of the subject matter, and as the defendant voluntarily adopted the remedy, it cannot set up its own wrong and profit by it.

2. The provision of § 10, act of February 19, 1849, P. L. 83, that when a company shall locate its road upon any street or alley, in any city or borough, ample compensation shall be made to the owners of lots fronting thereon, for any damage sustained by reason of any excavation or embankment made, applies only to streets opened for public use: Paul v. Carver, 24 Pa. 207; Grier v. Sampson, 27 Pa. 183; Cox v. Freedley, 33 Pa. 124; Easton Bor.'s App., 81* Pa. 85.

*Mr. Charles S. Stinson*, for the defendant in error:

1. Section 17, act of May 15, 1850, incorporating the borough of Conshohocken, P. L. 1054, appointed commissioners to lay out streets, etc., and enacted: " The streets, lanes and alleys so laid out shall from thenceforth be opened for public use, in the same mannner as if they had been laid out by an order of court in the usual way." Washington street was one of these streets.

2. Section 10, act of 1849, gives jurisdiction for the assessment of damages sustained " by reason of any excavation or embankment in the construction " of a railroad. Unless the fact of an excavation or embankment appear, the court has no jurisdiction in this form of proceeding: Cumberland V. R. Co. v. Rhoadarmer, 107 Pa. 214; Stroh v. Uhrich, 1 W. & S. 57; Montgomery v. Heilman, 96 Pa. 44.

OPINION, MR. JUSTICE STERRETT:

A brief outline of facts on which this contention is based will conduce to a better understanding of the questions involved.

In December, 1883, the railroad company, defendant, presented its petition to the Court of Common Pleas, setting forth

that it desired " to take and occupy for the purpose of constructing and operating its railroad, etc., all the right, title, interest, claim, and demand of Thomas J. Quigley, of, in, and to a certain private railroad siding, situate in the borough of Conshohocken, and the ground upon which the same rests, in so far as the same is located upon " certain premises described by metes and bounds in said petition ; that the company is unable to agree with said Quigley " upon the compensation to be paid for the damages done or likely to be done or sustained in consequence of the taking and appropriation of said land ; " that a bond with sufficient sureties had been tendered to and refused by said Quigley, and praying the court to approve the bond and direct the same to be filed for the use and benefit of said Quigley. On notice to him, the bond was accordingly approved and filed, and thereupon the company entered upon the premises described in its petition and proceeded to construct its road.

In March, 1884, on Quigley's petition, viewers were appointed " to view the premises of said petitioner and assess the damages done and likely to be done to him, both direct and consequential, by reason of the taking of the lands of said petitioner, and the location, erection, and construction of the said railroad and its appurtenances, as required by the constitution and laws of this commonwealth, and make report," etc.

The viewers reported they had " estimated and determined that the railroad company shall pay to said Thomas J. Quigley the sum of $4,628, as the amount of damages to which he is entitled by reason of the said railroad company taking and occupying, for the purpose aforesaid, the premises described in said papers annexed to said petition, and also for the said materials therein contained, and they further report that the ground taken as aforesaid is land used solely for business purposes, and on which a siding has been constructed for the use of the petitioner in his business." The report having been filed and confirmed nisi, the defendant company on April 26, 1884, appealed therefrom, and on the trial of that issue the rulings complained of were made.

In his instructions to the jury the learned judge assumed the position that plaintiff was not entitled to damages for the removal of his siding and appropriation of the land on which

it was located, unless they found as a fact that the natural or original surface grade of the land, on which Washington street had been located, was materially changed by cutting or filling in front of his property; that the company had a right to remove the entire artificial elevation or embankment on which his siding was laid, and thus deprive him of that means of access to his place of business without any liability to make compensation therefor. In that portion of the charge covered by the second specification of error he says: "That siding was destroyed because it was necessarily constructed upon an embankment made by the owner of that property, leading from the Reading Railroad by an elevated track into his premises. . . . . So far as it was an artificial embankment made in the street, I charge you that no excavation of it, although it did destroy the siding, would be a subject of damage in this case, because this was a regularly laid out public street, and, although it had not been opened by lawful authority, no property owner along it had the right under the law to build upon it or to put any obstruction there that would interfere with the ultimate opening of the street; . . . . . and if the general level of the street along there, as it originally existed, was not altered, but after the completion of the railroad the level was about as it existed before the artificial bank which supported plaintiff's siding was constructed, there can be no recovery of damages in this case," etc.

This instruction is unwarranted by anything that appears in the record, and the error appears to pervade the entire charge, including the answers to defendant's first and fourth points. The latter is a binding instruction, that unless defendant company made an excavation or embankment in the natural grade of the plotted street fronting plaintiff's property, there can be no recovery in this suit. The other is a qualified affirmance of the first point in which the learned judge says: "The plaintiff cannot be considered a trespasser, in the ordinary sense, because he constructed the embankment in question for his business purposes in a street laid out but not regularly opened for public travel until future legal proceedings; but, he could only maintain it subject to removal whenever the public exigencies required its abatement. When the railroad company acquired the right to occupy the street, the excava-

tion through plaintiff's artificial embankment did not make defendant responsible for damages."

Assuming the learned judge was correct in saying that Washington street, at the point in question, was merely "laid out, but not to be regularly opened for public travel until future legal proceedings," when and how did defendant company acquire the right to destroy plaintiff's siding, and appropriate to its own use the land on which it was constructed, without liability to make just compensation therefor? The street was located on the town plot with the view of its being thereafter regularly opened by the borough authorities for public use as a street of the borough, and not for the purpose of securing a right-of-way for defendant's benefit. Subject to the rights of the borough authorities, to be exercised when they saw fit to do so, the property in question belonged to plaintiff. The mere location of the street, and noting it on the borough plan gave the railroad company no control over the land embraced within its lines. The siding and connection with the Philadelphia and Reading Railroad Company had been maintained and used by plaintiff and his predecessor in title for many years without objection from any one who had a right to interfere with his enjoyment thereof. The right of plaintiff, as owner in possession and enjoyment of the premises, is recognized by the company itself in its petition and appropriation bond filed in court; and, if the trial had been conducted on that theory, the errors complained of would not have occurred. Whatever may have been the right of the borough authorities, on the one hand, to open and prepare the plotted street for public use, and the right of plaintiff, on the other hand, to demand compensation for the use thus made of his property, it is very clear that defendant company has no right to locate and construct its road on the premises in question without liability to make compensation according to the terms and conditions of the bond which it tendered and obtained permission to file for his use and benefit. The assignments of error are severally sustained.

> Judgment reversed, and a venire facias de novo awarded.