## Altomari, Appellant, *v.* Kruger et al.

Argued December 2, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

236

*Frank J. Eustace, Jr.,* with him *Norman J. Kalcheim* and *Francis M. McAdams,* of *Wilson & McAdams,* for appellant.

*Jay B. Leopold,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 11, 1937:

This was an action for damages for personal injuries and property damage sustained in a collision between plaintiff's and defendant's motor trucks.

On September 1, 1934, about 8 A. M., plaintiff was operating his motor truck eastwardly on Unity Street near Paul Street in the City of Philadelphia, and at the same time defendant's driver was operating its truck in a southerly direction on Paul Street in the vicinity of Unity Street. These two vehicles collided at the intersection. Plaintiff claimed that defendant's driver failed to have his motor vehicle under control and that it was being operated at a speed which was dangerous under the circumstances. After trial the jury awarded the plaintiff $6,000. Upon defendant's motion the court below entered judgment for defendant n. o. v. Defendant had also filed a motion for a new trial which the lower court dismissed, stating however that it considered the verdict excessive. Plaintiff appealed from the entry of judgment n. o. v. and by exception, notice of questions

to be argued, and by assignment of error, has asked this court to consider the question of the amount of the verdict, if it shall reverse the entry of judgment n. o. v. in favor of defendant.

Unity Street, on which plaintiff was driving his truck eastwardly, is 23 feet wide between curbs. Near the south sidewalk of this street, seven or eight feet from the west curbline of Paul Street, there was a sign reading: "Stop, Then Go When Safe." When the front of his truck reached this sign, plaintiff stopped and looked both ways. The building on the northwest corner was set back ten feet ten inches from the curb of Paul Street, this latter street being 26 feet wide between curbs. Plaintiff's view, at the time he stopped, to the left and north was 125 feet, in which distance he saw no moving traffic, but did see a truck parked on the west side of Paul Street in front of a grocery store. This store was the second house north on Unity Street. Plaintiff said that he then put his car in first gear and "eased out on to Paul Street." At that time he could see a distance of 500 feet to his left, that is, to the north. He then saw defendant's southbound truck, about 200 feet away and proceeding at the rate of about twenty miles an hour. He continued across the street in first gear, but kept watching defendant's truck. When the front of plaintiff's truck was passing over the center of Paul Street, he saw defendant's truck coming to a point opposite the grocery store, about 40 or 45 feet from Unity Street. The speed of defendant's truck had increased to about thirty to thirty-five miles an hour and it was out about six feet from the east curb. Defendant's truck was six feet wide and as it proceeded its right side was about one foot east of the center of Paul Street. Plaintiff's truck was proceeding in low gear about eight or ten miles an hour. Believing it then to be the best means of escaping a collision with defendant's truck, plaintiff attempted to increase his speed and get across the intersection before defendant reached there. Defendant's

truck, however, was, as plaintiff describes it, "leaning to his [defendant's driver's] left all the time." In other words, the defendant's truck was proceeding southwardly on Paul Street, not on its driver's right-hand side but on his left-hand side. Plaintiff testified that as defendant's truck was coming close to the intersection, "it looked like he increased his speed all the time." Plaintiff swerved his truck to the right. Plaintiff testified that he "thought by putting on a little more speed he may come around the back of me . . . thinking when he made the turn he was coming out of Unity Street to me, I immediately turned to the right and he struck me with the front of his truck with a glancing blow and hooked me on the rear left with his right hind wheel and dragged me down Paul Street. He turned over about thirty feet south of me and between him and the curb I turned over." Plaintiff's testimony was in its essentials corroborated by a passenger on his truck and by a pedestrian. Defendant's driver testified that he did not see plaintiff's truck before the crash.

In its opinion upon the rule for judgment n. o. v. the court below said: "There would have been no collision if plaintiff had done what he should have done, that is stop where he was. He was going very slowly—'easing into the street'—and could have stopped instantly. Instead, he chose to push forward across the street in the pathway of a car only forty feet from him. He did this thinking defendant would alter his course and pass behind him." In the light of what happened, we know now that it would have been prudent for plaintiff to have waited at the intersection until defendant's truck had passed. But plaintiff is not to be adjudged negligent because what he would have done had his judgment been faultless would have obviated the accident. We said in effect in *Weinberg v. Pavitt*, 304 Pa. 312, 155 A. 867, that one may be legally blameless in spite of an error of judgment where another has placed him in a situation where it is unreasonable to hold him to the

exercise of cool and correct judgment. We said in *Amey v. Erb,* 296 Pa. 561, 565, 146 A. 141: "Where one finds himself in a position of danger which is not the result of his negligence, he is not responsible if he make a mistake of judgment in getting out." In *Weiss v. Pittsburgh Ry. Co.,* 301 Pa. 539, 543, 152 A. 674, this court, in an opinion by the present Chief Justice, said: "The situation of danger arose after he was committed to the crossing. His acts with regard to negligence must be judged from the circumstances as they then appeared. In his position one is not required to exercise the highest or even an ordinary degree of judgment; it is a judgment arising from peril, or care under the circumstances. 'One placed in sudden peril without his fault is not responsible for an error of judgment': *Knepp v. B. & O. R. R.,* 262 Pa. 421 [105 A. 636]." Negligence is failure to conform to the standard of the reasonably prudent man. He who judges the quality of another's act under given circumstances has no warrant to demand that the actor's foresight should have been as unerring as the judge's hindsight. In *Adams v. Gardiner,* 306 Pa. 576, 160 A. 589, which case arose from a collision of two motor vehicles at a street intersection, we said: "Plaintiff cannot, on the facts as they then appeared. to him, be held chargeable with knowledge that a collision was inevitable if he continued on his way. If it appeared to him that his car would reach the intersection first, as he said it so appeared and did, he had a right to assume that the defendant even though going at the rate of thirty or thirty-five miles an hour, would recognize plaintiff's superior right to the intersection and control the car as a considerate driver would under the circumstances, i. e., apply the brakes and slacken his speed. If the plaintiff after reaching the square saw that the defendant had also reached the square and was in fact 'picking up speed' (as the former testified) his act in quickly swinging his car to the right was under the circumstances an act of prudence, and if defendant

had shown equal prudence by turning his car to the left the collision would probably have been avoided."

According to plaintiff's testimony, when defendant's truck was in front of the grocery store, about 40 or 45 feet north of the intersection, plaintiff was "about half way across at the time." Plaintiff said: "I took my eye off of him for an instant to put more gas on to get out of his road and he just swung to the left of him" (i. e., to the east side of the intersection). We think that plaintiff was justified in proceeding on the assumption, after considering the relation of the two cars at that time to the intersection, that defendant's driver would slow down or at least veer to his, i. e., defendant's driver's, right. We see nothing in plaintiff's conduct after he had "eased out" into the middle of the street that would justify declaring him guilty of negligence as a matter of law. Under the circumstances of this case, the question of his contributory negligence was for the jury.

There are many cases where the facts are such that a jury's finding of contributory negligence could not be characterized as contrary to the evidence, but it is only in those cases where contributory negligence is so clearly revealed that fair and reasonable individuals could not disagree as to its existence that it may be declared judicially. This is not one of those latter cases. See *Christ v. Hill Metal & Roofing Co.*, 314 Pa. 375, 380, 171 A. 607.

In discharging the rule for a new trial, the court below expressed the opinion that the verdict was excessive. We will reinstate the rule for a new trial; the court below may, when the record is again before it, make such an order in respect to this rule as it believes justice requires.

The judgment of the court below entering judgment for the defendant non obstante veredicto is reversed. Its order discharging the rule for a new trial is reversed and that rule is reinstated.