EMERSON, Respondent, vs. RIVERVIEW RINK & BALLROOM, Appellant.

*January 17—February 13, 1940.*

For the appellant there was a brief by *Bendinger, Hayes, Kluwin & Schlosser* of Milwaukee, and oral argument by *John A. Kluwin*.

For the respondent there was a brief by *Rubin, Zabel & Ruppa* of Milwaukee, and oral argument by *Nathan Ruppa*.

WICKHEM, J. On February 3, 1937, plaintiff, while a patron at the roller-skating rink of defendant, was injured by being run into and knocked down by another patron. Defendant's roller-skating rink was a steel and cement build-ing, one hundred forty by two hundred fifty feet in size.

Along its outside wall it had various accommodations, toilet facilities, checkrooms, skate rooms, and a section where skaters could put on their skates. An iron railing inclosed the inner portion of the building and marked the area for skating. This area was one hundred by two hundred fifteen feet. The railing was open at two places, and the space between the railing and the outside of the building could be utilized by patrons who wished to go to the washrooms, wardrobe, fountains, or benches. This space was not intended for general skating, but skaters were permitted to use it to go to and from the open skating area to use the various facilities of the building. Openings in the railing appear to have been at the northeast and southeast corners. Signs were displayed in the rink, "No fast or fancy skating in aisles." Defendant engaged guards who operated on skates and whose duty it was to patrol the rink. The number of these guards varied with the size of the crowd. There were always at least three guards and on nights when a large attendance was anticipated there were five. On February 3, 1937, there were three guards patrolling the rink. Plaintiff came to the rink on this evening with a party of friends. She had skated for about an hour and a half before the accident occurred. Just prior to the accident she was standing outside the regular skating area talking to one of her friends. The friend had her back to the railing, and plaintiff was facing the skating area. They were simply standing there talking. A couple of skaters approached from plaintiff's left, collided with her, and knocked her down, causing her injury. She did not see this couple before they struck her. There was nothing about their skating that attracted her attention at all. A guard immediately arrived, helped plaintiff up and assisted her to the office. According to the testimony of her companion, the couple who collided with her were skating "quite fast." Both plaintiff and her companion testified that during the evening they had seen people skating outside the rail at the same speed as the

skating inside the rail, and that there was fast skating in the outside areaway during the evening. The witnesses did not observe any attempt being made by the guards or attendants to stop fast skating. Upon these facts, the trial court found negligent violation of defendant's duty as a keeper of a place of amusement, and the first question is whether on this evidence the judgment can be sustained.

It is the general rule that the owner of a place of amusement is not an insurer of the safety of the patrons but owes to them only what under the particular circumstances is ordinary or reasonable care. See *Phillips v. Wisconsin State Agricultural Society*, 60 Wis. 401, 19 N. W. 377. The respects in which defendant is charged with a breach of duty are that it either failed to provide sufficient guards to enforce the rule against fast skating in the portion of the rink outside of the railing or that the guards provided negligently failed to discharge their duties of patrol. We conclude that the evidence does not sustain the findings. Assuming that the proprietor had a duty to provide guards or patrols to police the outside areaway of this rink and prevent fast or dangerous skating in that portion of the rink, we discover no evidence that the number of guards provided was insufficient to meet the needs of the rink and render it reasonably safe. Further than this, we find no evidence on which to base an inference that the skaters who collided with plaintiff should, in the exercise of ordinary care, have been noticed by the guards and required to desist from their manner of skating. There is no evidence as to how long or how fast this couple had been skating, and no evidence from which it could be concluded that their manner of skating was such as should have attracted the attention of the guards and resulted in intervention prior to the accident. Plaintiff testified that there was considerable fast skating during all of the time that she was there, and that this was not interfered with by the guards. Assuming that this would show a general laxity in enforcing the rules of the rink, it would not

advance plaintiff's cause. Plaintiff was not injured in any general melee of fast skating. She was struck by a particular couple of skaters. We know practically nothing about this couple. They were not identified. Plaintiff did not see them before they struck her, and her companion did not see them until an instant before. Her companion did not get a sufficient impression to be able to identify them or to notice their manner of skating except that they were skating quite fast. There is nothing to indicate that they were skating at a fast and dangerous pace for a sufficient time or under such circumstances that they should have been discovered and stopped by the guards. There is, consequently, no evidence that negligent policing, if it occurred, caused plaintiff's injury.

In addition to this, there is a further difficulty. Plaintiff had been skating for over an hour and a half. If conditions of great danger due to the fact that fast skating had been permitted in the outer areaway were observed by plaintiff, it is difficult for us to see why she did not assume the risk of standing in the areaway with her back to skaters who might collide with her. It is unnecessary to make any determination of this point, however, for the reason that we feel that there was no evidence to sustain the conclusion of the trial court that a negligent failure to police the areaway caused plaintiff's injuries. A number of cases are cited both by plaintiff and defendant, but we see no profit in discussing these cases. The nature of the duty of the keeper of a place of amusement is well established. See notes 22 A. L. R. 613, and 98 A. L. R. 557, for cases upon the subject. The question in this case is whether the evidence is sufficient to create an issue of fact as to the causal negligence of defendant. For the foregoing reasons, the question must receive a negative answer.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

FRITZ and MARTIN, JJ., dissent.