## Hall *v.* Robert Hawthorne Company, Appellant.

Argued October 3, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Ralph S. Croskey,* for appellant.

*Maurice Freedman,* with him *James F. Masterson* and *John E. Walsh, Jr.,* for appellee.

OPINION BY ARNOLD, J., November 12, 1947:

Plaintiff recovered judgment in trespass for personal injuries. The court below refused defendant's motion for judgment n. o. v. and defendant appealed, raising the single question whether plaintiff was guilty of contributory negligence as a matter of law.

Chancellor Street (also known as Indian Lane) in the city of Philadelphia, begins at Juniper Street, between Walnut and Locust, and runs east and west, and at the latter end enters Marble Court,[1] also known as Indian Reservation.[2] The northern curb of Chancellor Street continues past Marble Court and intersects the eastern curb of a narrow street known as Watts Street. The length of Chancellor Street to the eastern line of Marble Court is one hundred feet. The street is paved and curbed, the cartway being about seven feet, with a paved footwalk about eighteen inches wide along each curb, so that the buildings on each side of Chancellor Street are within eighteen inches of the cartway curb.

Stouffer's Restaurant fronts on the east side of Broad Street and extends easterly to Marble Court on the line of Watts Street. To the north of Stouffer's Restaurant is the Ritz-Carlton Hotel, also fronting on Broad Street and extending to the line of Watts Street and the line of Marble Court.

The plaintiff, an employe of Stouffer's Restaurant, walked north on Juniper Street, then turned and proceeded on the cartway of Chancellor Street, intending to reach the rear of Stouffer's Restaurant, abutting Marble Court. He walked in the cartway for a distance of about seventy-five feet, when a truck swung out of

---

[1] A space approximately 90 x 45 feet.

[2] Originally laid out as a trailer camp for Indian tepees.

Marble Court and turned toward the east on Chancellor Street. When the truck thus approached the plaintiff he stepped onto the sidewalk eighteen inches wide, on the north side of Chancellor Street. The cartway of Chancellor Street was only wide enough to accommodate the wheels of an ordinary truck. At this time he could not determine the width of the bed of the truck, but he would be entirely safe if the body of the truck had not extended beyond the wheels.

While the plaintiff was on the sidewalk the truck straightened out on Chancellor Street, proceeding at about two miles per hour (2.9 feet per second), and for the first time he was able to see that the truck bed extended over the wheels and occupied the space above the sidewalk. The truck was then "on top of him." The vehicle continued on and the plaintiff was squeezed between the building and the truck bed.

Defendant-appellant contends (1) that the plaintiff flattened himself against the wall without knowing whether there was sufficient clearance between the truck and him; (2) that plaintiff, when he saw there was insufficient clearance, should have moved into one of the doorways on the north side of Chancellor Street, or should have walked rapidly ahead of the truck to Juniper Street.

The question of plaintiff's contributory negligence was for the jury. When the plaintiff first knew that the bed of the truck would extend over the sidewalk, the truck was "on top of him." The plaintiff was then on a sidewalk where he had a right to be; and the truck had a right to occupy, not the sidewalk, but the cartway. Thus the plaintiff was confronted with a sudden emergency, not caused by his own tortious conduct, which required a rapid decision and which was a factor in determining the reasonable character of his choice of action : Restatement, Torts, §296. Therefore, whether plaintiff should have moved into one of the doorways, or turned and run ahead of the truck to Juniper Street, or acted as he did, was for the jury.

In testing the acts of the plaintiff we must keep in mind what was so well put by Chief Justice MAXEY in *Altomari v. Kruger et al.,* 325 Pa. 235, 188 A. 828 : "He who judges the quality of another's act under given circumstances has no warrant to demand that the actor's foresight should have been as unerring as the judge's hindsight." It therefore cannot be said that the plaintiff's own testimony put him out of court. When defendant's truck entered Chancellor Street the plaintiff was only twenty-five feet away. He was asked the question : "[At this time] did you think that the truck would pass you?" A. "I didn't know." Q. "When did you come to the conclusion that it couldn't [pass you]?" A. "When I was on the sidewalk and could see the amount of space between the truck and wall." Q. "And where was the front of the truck from your body at that time?" A. "Practically beside me." The court could not say as a matter of law that the plaintiff was testing a *known* danger. The inferences to be drawn from his testimony were for the jury.

Judgment affirmed.