Mazi *v.* McAnlis et al., Appellants.

Argued May 24, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*Roy M. Jamison*, with him *Robert E. Jamison* and *Jamison & Jamison*, for appellants.

*Marvin D. Power*, with him *Michael A. Barletta* and *Margiotti & Casey*, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 26, 1950:

These appeals are by two defendants from a judgment in a trespass action following a personal injury

by automobile. It is contended that the court below erred in (1) striking off a directed verdict for defendants and granting a new trial, (2) its refusal of motions for judgment for defendant *non obstante veredicto* and (3) its refusal of defendants' motion for new trial.

When the case was called for trial plaintiff did not appear, although his record counsel was present and acted. The trial judge directed a verdict for defendants, to which counsel excepted. It subsequently appeared that prior to the date specially fixed for trial plaintiff had discharged his attorney. There was a misunderstanding between plaintiff and his lawyer whether the trial was to proceed as scheduled or whether it had been postponed. Counsel conferred with the judge by telephone in plaintiff's presence and plaintiff consulted the prothonotary. It is not seriously questioned that plaintiff understood that the trial had been continued, which constituted his reason for his non-appearance. Plaintiff's present counsel promptly moved for a new trial and made a motion to strike off the directed verdict. Both motions were granted by the court.

In its written opinion granting the motions the court quoted Rule 218 of the Pennsylvania Rules of Civil Procedure, which reads as follows: "When a case is called for trial, if one party is ready and the other is not, without satisfactory excuse being made known to the court, a non-suit may be entered on motion of the defendant. . . ."

The court was of opinion, and so decided, that it was error for it to have directed a *verdict for defendant* instead of entering a *non-suit*. This is the correct interpretation of the rule. The court correctly struck off the entry of judgment. Cf. *Farmers Trust Company v. Alexander*, 334 Pa. 434, 6 A. 2d 262; *Quaker City Chocolate and Confectionery Company v. Warnock Building*

*Association et al.*, 347 Pa. 186, 32 A. 2d 5; *Wood et ux.
v. Garrett*, 353 Pa. 631, 46 A. 2d 321.

The court also granted the motion for a new trial.
In the court's opinion it is stated: "The responsibility
for the present situation (i.e. non appearance of plain-
tiff) lies directly upon the plaintiff and the attorney
whom he originally retained to represent him." Because
of the obvious misunderstanding, the court did not
abuse its discretion in granting a new trial. The grant-
ing of a new trial will not be disturbed in the absence
of abuse of discretion. In this case there was no such
abuse: *Burton v. Morvay*, 348 Pa. 113, 34 A. 2d 489;
*Lambert et al. v. Durallium Products Corporation*, 364
Pa. 284, 72 A. 2d 66.

Defendants complain of the court's refusal to grant
their motions for judgment *non obstante veredicto*. The
pertinent facts are narrated in Judge LAMOREE'S care-
fully considered opinion. He said: "On November 15,
1946, at about 9 A. M. Robert McAnlis, then aged 17
years, was driving a 1932 Buick Sedan, owned by his
father, in a northerly direction along State Route No.
317. Riding with him were his two sisters and a brother
and four other children, all of whom he was taking to
school in Mount Jackson with the exception of his sis-
ter, Marjorie, whom he was taking to her place of
employment. The defendant, Robert McAnlis, had an
operator's license and had been taking the children to
and from school almost daily since school opened in
September, 1946. The visibility was poor because of a
heavy fog which had blanketed the district since early
morning and had not completely lifted. The car had
been used by Robert McAnlis with his father's knowl-
edge since the opening of school, for the purpose of
transporting his brother and sisters, together with other
children in the neighborhood, to and from the Mount
Jackson school which was about seven miles distant
from defendants' home.

"The plaintiff, Toni Mazi, a welder, was returning from his work to his home in Bessemer, and stopped his car on State Route 317 about 140 feet north of the intersection of the New Castle-Enon Valley road and the Mount Jackson-Bessemer (State Route 317) road. He had been proceeding north on the said route 317 and pulled to the right of the highway, his right wheels on the berm and his left wheels 1 to 2 feet on the concrete portion of the highway and stopped for the purpose of cleaning his windshield. He was standing on the left side of his car when he first observed the defendant's machine approaching him from the south about 82 feet away. He jumped on the left running board of his car as the defendant's car drew nearer, and remained there until he was sideswiped by the defendant's car and rolled between the cars to the front end of his own car, where he fell in front of the left wheel of his car, seriously injured."

". . . the plaintiff testified that he could see three hundred (300) feet in either direction . . . there is testimony to the effect that the area is 'fairly closely built up.'"

Defendants contend that plaintiff was guilty of contributory negligence *as matter of law*, which precludes recovery. In considering such contention the evidence must be regarded in the light most favorable to plaintiff, and be given the benefit of all favorable inferences of fact: *Bartleson et al. v. Glen Alden Coal Company*, 361 Pa. 519, 64 A. 2d 846; *Davenport, Trustee et al. v. Pennsylvania Railroad Company*, 364 Pa. 202, 72 A. 2d 59. The alleged negligence of plaintiff consisted of permitting his automobile to stand partly on the paved road, in a fog and with poor visibility, while he got out on the paved roadway, beside his car, in order to wipe off his windshield. In *Shoffner v. Schmerin*, 316 Pa. 323, 175 A. 516, the late Chief Justice MAXEY said, p. 326: "For a truck to proceed, *on the proper side of the highway,*

through a fog bank at a cautious rate of speed *or even to stand still there in a proper position for a reasonable length of time for any legitimate reason is not in itself negligence.*" (Latter emphasis supplied.) See *Ray v. Manculich et al.*, 363 Pa. 445, 70 A. 2d 302. It is only when plaintiff's own evidence *clearly* shows contributory negligence, and is so clearly revealed that fair and reasonable individuals could not disagree as to its existence, that it may be so declared *as matter of law.* Where the evidence is conflicting the question of contributory negligence becomes *a question of fact for the jury:* Cf. *Altomari v. Kruger et al.*, 325 Pa. 235, 188 A. 828; *McFadden v. Pennzoil Company*, 341 Pa. 433, 19 A. 2d 370; *Ray v. Manculich*, supra. A review of the evidence discloses that the testimony concerning plaintiff's contributory negligence was conflicting. It therefore became a question of fact for the jury. The defendant-driver's negligence, in running into a standing car is not seriously questioned. While there was a fog, and poor visibility, there was testimony that plaintiff could see 300 feet in each direction. There was also uncontradicted testimony that the visibility was "from two car lengths to 100 feet". It was testified that after plaintiff stopped his car and was wiping off his windshield, he saw the defendant-driver approaching in his car 82 feet away. It was not contributory negligence *as matter of law* for the plaintiff to stop his car in such fog and visibility and to stand still for a reasonable time for the purpose of cleaning his windshield. Under the present facts and circumstances defendants' negligence and plaintiff's contributory negligence became *questions of fact for the jury.*

The father-defendant, owner of the automobile, seeks to escape liability upon the ground that he was the owner of the vehicle and that the son-driver-defendant, while driving with his permission, nevertheless was neither the father's servant nor agent. It is the duty of

a father to educate his children. The school is seven miles distant from defendant's home. Some of the children were of tender age. When the father consented and permitted the use of the automobile by his son for the purpose of transporting the children to and from school, the son clearly was acting on behalf of the father and for the father's benefit. The question of agency was therefore for the jury: *Raub v. Donn*, 254 Pa. 203, 98 A. 861; *Warman v. Craig*, 321 Pa. 481, 184 A. 757; *Hildock v. Grosso*, 334 Pa. 222, 5 A. 2d 565; *Lambert et al. v. Polen*, 346 Pa. 352, 30 A. 2d 115. See also section 224 and section 238 of Restatement of Agency. The fact that the car *also* served the convenience of other passengers, does not relieve the father from liability: *Fox v. Cahorowsky*, 66 Pa. Superior Ct. 221; *Irvine v. Killen*, 109 Pa. Superior Ct. 34, 37, 165 A. 528; *Spegele v. Blumfield*, 120 Pa. Superior Ct. 231, 182 A. 149.

Defendants contend that plaintiff must be declared guilty of contributory negligence *as matter of law* when he stopped his car on the road with the left wheels one foot or more on the paved highway, in violation of section 1019 of the Act of May 1, 1929, P. L. 905, as amended, 75 PS, section 611. This section prohibits parking "outside of a business or residence district" upon the "paved or improved or main traveled portion of such highway." "A residence district" is defined in the Act: ". . . when the frontage on such highway for a distance of three hundred (300) feet or more is closely built up with dwellings. . . ." Apart from the question as to whether plaintiff was "parking" his car within the meaning of the Act, there was testimony that at the scene of the accident the area is "fairly closely built up". Whether or not there was a violation of The Vehicle Code, and if a violation, whether or not such violation was the proximate cause of the accident, are questions of fact for the jury: *Bricker v. Gardner et al.,* 355

Pa. 35, 48 A. 2d 209; *Purol, Inc. v. Great Eastern System, Inc.*, 130 Pa. Superior Ct. 341, 197 A. 543.

We do not regard a verdict of $12,961.75 as grossly excessive in the facts of this case. Plaintiff suffered permanent injury in the loss of his left eye. He experienced pain and suffering and was subjected to medical and surgical expense. While to date his earnings have not been diminished, but indeed have increased, the medical testimony is to the effect that a hazard exists to the uninjured eye if plaintiff continues to work at his vocation as a welder. Because of his loss of his eye neither the United States Navy nor the United Engineering Company (his former employer) will permit him to return to them for work in his occupation. The consideration of loss of earning capacity is not solely the comparative amount of money earned before or after an injury. The true test is whether or not there is a loss of earning power, and of ability to earn money: *Frysinger v. Philadelphia Rapid Transit Co.*, 249 Pa. 555, 559, 95 A. 257; *Yeager v. Anthracite Brewing Company*, 259 Pa. 123, 128, 102 A. 418; *Tingle v. Curtis-Martin Newspapers, Inc.*, 318 Pa. 537, 540, 179 A. 80; *Saganowich et al. v. Hachikian*, 348 Pa. 313, 316, 35 A. 2d 343.

The review of this record discloses no trial errors. The verdict of the jury and the amount of recovery are fully supported by the evidence.

Judgment affirmed.