Rauch *v.* Pennsylvania Sports and Enterprises, Inc., Appellant.

Argued October 9, 1950; reargued May 25, 1951. Before Drew, C. J., Stern, Stearne, Jones, Bell, Ladner and Chidsey, JJ.

*James J. Burns, Jr.,* for appellant.

*Saul Chersky,* for appellees.

Opinion by Mr. Justice Chidsey, June 27, 1951:

Charlotte Rauch and Elmer M. Rauch, her husband, appellees, instituted this action in trespass against Pennsylvania Sports and Enterprises, Inc., to

recover damages for injuries sustained by the wife when, as a patron of appellant's ice skating rink, she was run into and knocked down by another patron. A jury returned verdicts in favor of both husband and wife. These appeals are from a dismissal of defendant's motion for judgment *non obstante veredicto* and for a new trial.

Pennsylvania Sports and Enterprises, Inc., on December 9, 1941, operated an ice skating rink known as "The Gardens", situate at 110 North Craig Street, Pittsburgh. The rink is rectangular and extends in length from Craig Street to Neville Street. The skating area, 180 x 85 feet, is surrounded by rows of seats for spectators. The entrance to the rink is on Craig Street and the exit on Neville Street. The main body of skaters circle the rink counter-clockwise. The center is used for fancy skating. Beginners' sessions, largely attended by children although also open to and used by adults, were held on Tuesdays and Fridays.

Mrs. Rauch, on Tuesday, December 9, 1941, accompanied by her two children, James, age 16, and Eleanor, age 7, entered defendant's rink about 6:00 p.m. to attend a beginners' skating session. On entering upon the ice, Mrs. Rauch was immediately aware that other patrons, primarily boys, skated against the counter-clockwise flow, played games, chased each other and cut across the ice in all directions. There were uniformed guards at the rink, but they took no action to stop these practices which went on practically continuously. Mrs. Rauch and her daughter skated for approximately half an hour but during this time left the ice on at least four occasions because of the danger. On the last occasion skaters cutting in and out contrary to the flow of skaters almost knocked her daughter out of her hands. She complained to the guard, who, although he said he would see what could be done, skated off with a girl companion and did nothing. No

effort on the part of any of the several guards was made at any time to stop the conduct complained of. Mrs. Rauch and her daughter after ten or fifteen minutes returned to the ice because Mrs. Rauch then "thought it was a little better".

Conditions did not improve and Mrs. Rauch became apprehensive for the safety of her daughter. She told her daughter that when she saw her brother she should tell him to take her off the ice, and that she, Mrs. Rauch, would meet them at the exit. They met the son and he took the daughter near the side rail of the rink about midway between the Neville and Craig Street ends of the skating area. After the children left her, Mrs. Rauch skated "toward the center". The conditions complained of existed only on the inside of the flow or stream of skaters which was about 18 feet in width. Mrs. Rauch reached and was skating on the inside of the stream of skaters when another of defendant's patrons, an unidentified boy between 12 and 14 years of age, cut into the flow of skaters, crashed into her, knocked her down and caused the injuries for which suit was brought.

Plaintiffs contend that defendant was negligent in not maintaining orderly skating by its patrons, more specifically in permitting skating contrary to the counter-clockwise flow, the playing of games, and the cutting in and out in all directions without regard to the presence of others. Defendant, appellant, contends that there was (1) a failure to prove any negligence on its part which was the proximate cause of Mrs. Rauch's injuries; and (2) in any event, the wife-appellee was guilty of contributory negligence as a matter of law when she, with full realization of the dangerous conditions, remained on the ice and skated directly into the area in which the danger existed. The order dismissing the motion for judgment *non obstante veredicto* must be reversed.

The testimony clearly establishes that the wife-appellee was fully cognizant of the very conditions which she asserts in her endeavor to hold appellant responsible for the injuries and damage which she and her husband sustained. Four times within half an hour after she and her children entered upon the ice, she and her daughter left in order to keep from being bumped into and knocked down. She observed that many skaters moved clockwise, contrary to the flow, "cut across the ice and back into you, in all directions"; that "There were a lot of them doing that. All evening they were cutting in." On the fourth occasion, her daughter was almost knocked out of her hands. She complained to the guard of this dangerous conduct. She and her daughter left the ice for ten or fifteen minutes. Conditions looked "a little better" and they returned to the ice. They again skated for approximately half an hour and the situation did not improve. She stated, "They started to skate in and out in the wrong direction and I was afraid, . . .". She told her daughter that when they saw her brother he was to take her off the ice. She nevertheless remained and "skated toward the center" where she had observed the unremitting dangers of which she complained.

Obviously, Mrs. Rauch chose to match her skill as a skater against what to her was a manifest danger. When she reentered this area of danger, she deliberately exposed herself to the risk of injury happening in the very manner which she had anticipated all evening, and of which she was so acutely aware that she had sent her children from the rink. She had knowledge of the conditions, realized and voluntarily assumed the risk involved. See *Shields v. Van Kelton Amusement Corp.*, 228 N. Y. 396, 127 N.E. 261; *Emerson v. Riverview Rink & Ballroom*, 233 Wis. 595, 290 N.W. 129. Cf. *Restatement, Torts*, Sections 340, 341, 348.

Appellees rely upon *Rommel v. Schambacher*, 120 Pa. 579, 11 A. 779; and *Kennedy v. Pennsylvania Railroad Company*, 32 Pa. Superior Ct. 623. In the former, plaintiff had no warning or (reason to believe) that a fellow customer in defendant's saloon would set fire to him by a drunken freak described by the Court as "an insane and brutal trick". In the latter, a crowd of boisterous football enthusiasts in a corridor between the waiting room and the train shed at the Broad Street Station Building in Philadelphia knocked down a woman proceeding to board a train. No issue of contributory negligence was raised, and plaintiff testified that "it all happened in a minute". There was no evidence that plaintiff had previously observed any conduct threatening physical injury.

*Moone v. Smith*, 6 Ga. App. 649, 65 S.E. 712, is relied upon by appellees as persuasive authority with regard to the issue of the wife's voluntary assumption of the risk. The case is not applicable principally for the reason that there the question was whether the complaint or petition by means of which suit was instituted stated a valid cause of action free from contributory negligence. The petition alleged that while plaintiff was engaged at playing a game of pool at one end of a billiard parlor several men who had been drinking heavily became engaged in a quarrel at the other end of the room; that suddenly the fighters precipitated themselves to the pool table which the plaintiff was using, and ran against him with such suddenness and violence that he was unable either to withdraw or defend himself; and that all of this occurred while one of the proprietors stood by but neither said nor did anything. The court held that, in these circumstances, it could not be conclusively held that plaintiff could have avoided the injury by the exercise of ordinary care and diligence. In that

case, there had been no testimony taken; the issue was the sufficiency of the complaint. In the instant case, the record is complete and all the circumstances surrounding the accident have been fully presented. Here, with the facts established, it is the testimony of the wife-plaintiff herself which conclusively establishes that she was fully cognizant of the rudeness and recklessness with which other patrons were conducting themselves, and that she elected to skate directly into the heart of the danger area rather than skate along the comparatively safe side of the rink.

It is the duty of the Court in these circumstances to hold that the wife assumed the risk of her actions. Concluding as we do that the conduct of the wife bars recovery by her and also by the husband, whose rights are derivative, it is unnecessary to determine whether there was sufficient evidence to enable the jury to find appellant guilty of negligence.

Judgments reversed and here entered for appellant.

---

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

This Court has repeatedly decided when contributory negligence may be declared judicially. *It is only where such negligence is so clearly revealed that fair and reasonable individuals could not disagree as to its existence: Altomari v. Kruger et al.,* 325 Pa. 235, 188 A. 828; *Van Note v. Philadelphia Transportation Company,* 353 Pa. 277, 45 A. 2d 71; *Mogren et ux., v. Gadonas et al.,* 358 Pa. 507, 58 A. 2d 150; *Callahan v. Wishart & Sons, Co.,* 365 Pa. 498, 76 A. 2d 386. In my view the existence or absence of contributory negligence was for the jury. The obvious paradox of the majority opinion becomes apparent where, applying the above rule, the record discloses that the trial judge with two other judges in the court below (composing

the court in banc) and three justices of this Court do not agree that the evidence establishes contributory negligence on the part of defendant.

I would affirm the judgments entered on the verdicts.

Mr. Justice JONES and Mr. Justice LADNER join in this dissent.