## Dorofey v. Bethlehem Steel Company

*H. Clifton McWilliams, Jr.* and *Benjamin Hinchman, 3rd,* for plaintiffs.

*Francis A. Dunn,* for defendant.

WOLFE, J., July 18, 1961.—On November 14, 1956, Algerd A. Bender and Cenifon Dorofey, employes of Industrial Pipe Cleaning Company, drowned in a sewer in Franklin Plant, Bethlehem Steel Company, Johnstown, Pennsylvania.

The Franklin Plant includes blast furnaces, coke ovens, and other basic steel-making activities. Great heat is involved and abundant water is required for cooling and washing operations. This water, along with other waste, and surface water from a small creek, is carried off into the Little Conemaugh River by a large sewer, 7 feet 7 inches high by 6 feet 6 inches wide. Sediment and debris accumulating on the bottom of this sewer must be cleaned out from time to time. Industrial Pipe Cleaning Company, with Bender in charge, had done this in 1950-51, and was again doing it in the fall of 1956.

For some weeks they had been working in the location where the drownings occurred. Two openings

were made in the sewer, 250 to 300 feet apart, and hoists were set up at each. A cable was strung between them in the sewer and a "drag," a sort of large gouge, was attached to the cable. By hauling this back and forth, debris and dirt on the sewer bottom were loosened and pushed out. To set up and operate this equipment it was not necessary to enter the sewer.

The "drag" had been sticking at some point between the openings, and a day or two before November 14, 1956, Bender had taken Dorsey Dorofey, an employe, to a platform within the lower opening, searching for the obstruction which caused the "drag" to stick. There he pointed out to Dorofey a "build up" in the sewer about 15 feet upstream from the platform. At the same place, there was a drop in the floor of the sewer. The water level in the sewer was 30-34 inches, a fairly constant condition, and Bender got down into it below the platform, but the water was so swift he could not stand. The drop in level and the "build up" increased the velocity of the water at this point and for an undetermined distance back upstream. Generally, similar conditions had existed five or six years earlier when the employes of Industrial Pipe, under the supervision of Bender, had been down in the sewer in this location.

About 10:30 on the morning of the accident, Bender notified Dorsey Dorofey that he and Cenifon Dorofey were going down into the sewer to see if they could determine why the drag was sticking. Entering the upper opening with ropes and crow bars, they were met at a middle opening by Dorsey Dorofey who handed them another line about 11:25 a.m. They then proceeded down the sewer and when they did not appear in half an hour, Dorsey Dorofey became alarmed and entered the upper opening to search for them. He found that the swift water and stones on the sewer floor made footing difficult. Proceeding carefully so that he would not fall, he reached a point 60 to 70 feet

beyond the middle opening where a 36 inch lateral entered the main sewer. This lateral carried other water into the main sewer, and just above it he found the body of his brother. He could feel, but could not see, the water entering the main line from the lateral At this point he could barely stand up and held on to the cable for support. Footing was difficult throughout the part of the sewer he had covered, but was more difficult where the lateral entered the main line. In the opinion of Dorsey Dorofey, this increased speed of water flow was due to the lateral, but he did not know whether it may have been due in part to the drop and "build up" farther downstream. Until the accident, Bethlehem was not aware that men were going into the sewer, but it knew that there was such a possibility, though, apparently, nobody had entered the sewer until this day.

Cenifon Dorofey's body was recovered that day and later the level of the water in the main sewer, but not in the lateral was reduced, and Bender's body was recovered. An autopsy excluded the presence of sewer gas in the body of Cenifon Dorofey, but no check was made for the presence of sulphur dioxide in the sewer itself. Sulphur dioxide, described as the second most important sewer gas, cannot be detected in the human body

These suits were then begun under the wrongful death and survival actions, and were consolidated for trial. After the close of plaintiffs' case, a motion for a compulsory nonsuit was sustained. We are now considering a motion to take off the compulsory nonsuit, and we must view the evidence together with all reasonable inferences therefrom, in the light most favorable to plaintiffs.

Plaintiffs' theory is that the two men, while working downstream through the sewer, were swept off their feet by the increased speed of the water where the 36 inch laterial intersected the main sewer. At the trial,

they argued that the sewer was under the management of defendant, and the accident was such as in the ordinary course of things does not happen if those who have the management use proper care, and therefore there was reasonable evidence, in the absence of explanation by defendants, that the accident arose from want of care: Mack v. Reading Company, 377 Pa. 135. This doctrine of exclusive control is generally restricted to cases which are exceptional and where the evidence of the cause of the accident is not equally available to both parties, but is peculiarly or exclusively accessible to or within the possession of defendant: Miller v. Hickey, 368 Pa. 317.

It has been applied where a greasy bolt fell from the ceiling of a theater and struck a patron, Skeen v. Stanley Company of America, 362 Pa. 174; where bed cleats gave way injuring a hotel patron, Tafres v. Reed, 109 Pa. Superior Ct. 28; where a coffee jar exploded on a store shelf injuring a customer, Dillon v. William S. Scull Company, 164 Pa. Superior Ct. 365, and where a steel coupler over 300 pounds in weight, broke off one of defendant's railway cars, rolling down a bank on to the highway in the path of plaintiff's truck, Mack v. Reading Company, supra. In spite of the general language of the rule, it is mainly applied in extraordinary situations where the accident happens "out of the blue." The limitations of the rule were carefully explained in Haddon v. Lotito, 399 Pa. 521, as follows: "It is the unusual character of the attendant circumstances which constitute evidence from which the existence of negligence may be inferred by the jury." And ". . . the doctrine is applicable to a situation where, in the light of human experience, the accident was such as almost invariably occurs because of negligence on the part of the person in control of the operative instrumentality."

It is apparent, therefore, that the accident must

not only be unusual, which, indeed, most accidents are, but it must be extraordinary, happening with a dramatic surprise which communicates lack of care. Although drowning is not a usual and ordinary thing, drowning in a large sewer where 30 to 34 inches of water is running swiftly, is not the type of extraordinary event which immediately suggests some negligence on the part of the landowner. Plaintiffs' own evidence tended to prove that the drownings occured because of conditions within that sewer which were average and usual under the circumstances.

Moreover, in this case, employes of Industrial Pipe Company were occupying the sewer, and one of them was in it immediately after the accident happened, with a better opportunity than defendant to observe the conditions and circumstances which led to the accident. As was said in Cohen v. Penn Fruit Company, Inc., 192 Pa. Superior Ct. 244: "As a necessary basis for the application of the exclusive control doctrine, it must appear that the negligent cause or thing which produced the injury was wholly and exclusively in the possession and under the control or management of the defendant or his agents. Although such control does not necessarily mean actual physical control but rather the right to such control, where either access to superior knowledge or the evidence does not exclude the possibility of an intervening fault, the plaintiff is not entitled to benefit from the exclusive control doctrine. . . ." See also Stewart v. Morow, 403 Pa. 459, where the exclusive control doctrine was not applicable because the evidence of the cause of the accident was equally available to both parties.

In the exclusive control cases, there is no doubt as to the motive force or agency which produced the accident. Where a falling object or moving body is identified by the evidence as having caused the accident, the question then is what set that force in motion, what

caused it to commence on its dangerous and injury producing course? Here we have no such evidence. We know that these men were drowned in the sewer but we do not know what caused them to drown. It may have been the force of the water which upended them, or they may have stumbled on the rockstrewn floor of the sewer, or their crow bars or rope may have tripped them, or they may have fallen while attempting to dislodge an obstruction, or they might have been momentarily overcome by sulphur dioxide and sunk into the water.

Plaintiffs argue that under the circumstantial evidence theory of negligence they established that it was the increased force of the water at the 36 inch lateral which upset these two men. Circumstantial evidence, with the inferences reasonably deducible therefrom, is adequate to establish the conclusion sought, if it so preponderates in favor of the conclusion as to outweigh in the mind of the factfinder any other evidence and reasonable inferences therefrom which are inconsistent therewith: Smith v. Bell Telephone Company of Pennsylvania, 379 Pa. 134. In that case and in Moidel v. Peoples Natural Gas Company, 397 Pa. 212, both relied upon by plaintiffs, there was positive evidence that an instrumentality of defendant had caused the accident. In the one case it was a broken conduit, and in the other, a broken gas line. Here we are asked to conclude that the circumstantial evidence proved both how the accident happened and defendant's negligence. We do not believe the circumstantial evidence theory was intended to go that far.

The exclusive control doctrine and the circumstantial evidence theory of negligence shift the burden of coming forward with the evidence to defendant. But neither rule will take plaintiffs' case to the jury where the facts developed disclose no negligence, since a jury may not arrive at its verdict on the basis of speculation

or conjecture: Smith v. Bell Telephone Company of Pennsylvania, 397 Pa. 134. It is our opinion that the exclusive control doctrine does not apply because (1) this was not an extraordinary event, (2) defendant was not in exclusive possession and control of the place where the accident happened, and (3) the cause of the accident is not known. It is also our opinion that the circumstantial evidence theory of negligence does not apply, because plaintiffs have not shown how the accident happened, which they must do before they can rely upon circumstantial evidence to infer negligence on the part of defendant.

Assuming, however, that plaintiffs' evidence was sufficient to establish that the men drowned because an increase in the velocity of the water where the 36 inch lateral entered the main sewer swept them off their feet, does this prove negligence on the part of defendant? We think not.

Section 341 of the Restatement of Torts provides as follows: "A possessor of land is subject to liability to licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by his failure to carry on his activities with reasonable care for their safety, *unless the licensees know or from facts known to them, should know of the possessor's activities and of the risk involved therein.*" Comment (a) under that section contains the following statement: ". . . If he (the licensee) knows of the nature of the activities conducted upon the land and the manner in which they are conducted, he has all that he is entitled to expect, that is an opportunity for an intelligent choice as to whether or not the advantage to be gained by coming on to land is sufficient to justify him in incurring the risks incident thereto."

Section 343 of the Restatement of Torts provides as follows: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural

or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, *he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein,* and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

Section 341 of the Restatement cannot apply because the licensees knew, or from facts known to them should have known, of defendant's activities and of the risk involved therein. Section 343 of the Restatement cannot apply for the same reason, and also because defendant neither knew nor had reason to know that these men would be down in the sewer at this time and place.

Bender had been down in the sewer near the point of the accident a day or two earlier, and had discovered that the water was so swift he could not walk in it. Since he realized the risk involved, defendant would be under no duty to warn employes under him: Engle v. Reider, 366 Pa. 411. Also, since both he and Dorofey were in the sewer for an hour or more before the accident, they must have observed what Dorsey Dorofey observed a short time later; that the water passed downstream with an unbalancing force and the sewer bottom was sown with rocks and debris through its entire length, from the point where they entered to the point where Cenifon Dorofey's body was found.

A business visitor who enters and remains upon land of defendant with full knowledge of the risk of injury created by an activity thereon, voluntarily assumes the risk and may not recover for any resulting harm: Rauch v. Pennsylvania Sports and Enterprises, Inc.,

367 Pa. 632. A person entering upon land which he knows to be in a natural and unprepared state cannot expect the safety of improved property: Kubacki v. Citizens Water Company of Washington, 403 Pa. 472.

Here, Bender and Cenifon Dorofey entered into a large, subterranean sewer which contained certain inherent and obvious dangers. The very reason why they were there was the difficulty of cleaning such a sewer except with special knowledge and equipment. They knew it to be a sewer carrying off large amounts of industrial waste water in a swift flowing stream. It was unlighted and contained debris and sediment on the bottom which they were there to remove, and they knew the footing was difficult and, in places, impossible. They could not expect that such surroundings would be as safe or easily traversable as surface land of defendant, and they must have known when they entered the sewer that one of the obvious dangers was that they would be upset and fall into the swift flowing stream. It is tragic that that is what happened but defendant cannot be held liable for it on the evidence produced. Therefore, we enter the following

### Order

And now, July 18, 1961, plaintiffs' motions to take off the compulsory nonsuits are denied.