Szanborsky *v.* Armour & Co., Appellant.

Argued January 14, 1932.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

. *Walter Lee Sheppard,* of *Foulkrod, Sheppard, Porter & Alexander,* for appellant.——The negligence alleged

does not support the verdict, which rests on a finding of different negligence, higher in degree.

After the statute of limitations has run, a plaintiff cannot, by amendment, introduce a new cause of action: Goldberg v. Friedrich, 279 Pa. 572; Mays v. Gas Co., 268 Pa. 325; Herz v. R. R., 302 Pa. 325; Kehres v. Stuempfle, 288 Pa. 534.

The proofs do not support the jury's findings.

An invitation to sit on the guard rail did not imply an invitation to recline on it.

A general invitation to sit down could not justify any inference that the guard rail of a machine was intended to be indicated: Edmundson v. Light & Power Co., 223 Pa. 93.

An invitation to do something, the consequences of which are apparent to the one so invited, cannot constitute negligence: Landis v. Curtis & Jones Co., 224 Pa. 400.

Plaintiff was a mere invitee, as to whose safety defendant owed merely the duty of reasonable care: Nichol v. Telephone Co., 266 Pa. 464.

Defendant was under no duty to warn plaintiff that a large electric motor, operating a driving belt, was dangerous: O'Keefe v. Thorn, 24 W. N. C. 379; Gallagher v. Snellenburg, 210 Pa. 642; Fletcher v. Traction Co., 190 Pa. 117.

The fact that a machine is at rest at any particular moment does not render it any less dangerous under the rule of law here applicable, for the very reason that it may start up at any time: Landis v. Curtis & Jones Co., Inc., 224 Pa. 400; Fletcher v. Traction Co., 190 Pa. 117; Baldwin v. Urner, 206 Pa. 459; Fick v. Jackson, 3 Pa. Superior Ct. 378.

The physical facts show that plaintiff is solely responsible for the accident: Maue v. Ry., 284 Pa. 599.

Plaintiff was guilty of contributory negligence.

*George H. Scatchard,* with him *Robert F. Bogatin,* for appellee.—Plaintiff's testimony clearly shows that he was an invitee on defendant's premises.

The duty owed to an invitee is of the highest degree: John v. Reick-McJunkin Dairy Co., 281 Pa. 543; Robb v. Niles-Bement-Pond Co., 269 Pa. 301; Kapuscianski v. Coal & Iron Co., 289 Pa. 388; Barre v. R. R., 155 Pa. 170; Kay v. Ry., 65 Pa. 269, 278.

The place occupied by plaintiff was safe until a condition arose without notice or knowledge to plaintiff that the condition would change and the place would become a highly dangerous one: Coll v. Electric & Mfg. Co., 230 Pa. 86.

The duty to plaintiff is greater than to an employee, where his position places him in proximity to dangerous machinery: Staddon v. Mineral Co., 33 Pa. Superior Ct. 475; Rummel v. Dilworth, 131 Pa. 509.

Plaintiff cannot be held to assume the risk of dangers of the existence of which he has no knowledge: Sturtz v. R. R., 225 Pa. 249; Frantz v. Electric Co., 231 Pa. 589.

Plaintiff was not guilty of contributory negligence.

OPINION BY MR. JUSTICE SCHAFFER, March 14, 1932:

Plaintiff brought this action to recover damages for personal injuries caused, so he alleges, by defendant's negligence. He recovered a verdict and judgment and defendant appeals.

Appellee called at the branch packing house of defendant at the request of its manager to see the manager for the purpose of giving him information regarding the improper icing of some of defendant's cars by an ice company. It was his third visit. The manager's office fronted on a hallway. At the end of the hall and some six or more feet from the doorway leading into the manager's office, was an engine room, in which, directly in front of its entrance, was an electric motor. This machine was guarded by iron piping two and a half inches

in diameter in the nature of a fence about four feet high, composed of upright pipes at each end and two horizontal ones fitted into the uprights, one at the top and the other about two and a half feet from the floor.

Plaintiff testified that when he entered the office of the manager, the latter was at the telephone. He told plaintiff to sit down; "He pointed like that, to sit down." Plaintiff testified that the manager indicated by pointing that he was to sit, not on a chair in his office, but in the engine room at the end of the hallway and on the guard rail in front of the motor. There were no chairs in the hallway, although there were some in the manager's office. Plaintiff seated himself on the lower guard rail. He testified that the manager came out of his office, saw him seated on the rail and told him to stay there, that he, the manager, would be with him in a minute. He said that when he sat on the rail he put his back against one of the vertical rails and stretched his right leg along the lower horizontal one. His foot did not reach to the end of the rail on which he was seated by a foot or more. He kept his left foot on the floor. He said that the motor was not running and had not been on the other occasions when he sat on the rail and that his foot was at least six inches from the nearest part of the motor, that while he was so seated, after an interval of ten minutes or more, the electric motor suddenly started, his right foot was caught in the belt or pulley connected with the motor and his foot was torn off. Just how his foot came to be caught is not made altogether clear. He had been working all night handling bags of potatoes and whether he was drowsy and his foot slipped from the iron rail or just what caused its contact with the motor is left largely to conjecture. Plaintiff further said that on two prior occasions when he called on the manager he had seated himself on the rail in the same way with the latter's knowledge. In his original statement of claim filed in the case, he averred that on the day of the accident he was notified by the

manager "to sit down in a chair" and while so seated the accident happened, whereas in his amended statement the reference to the chair was eliminated.

The plaintiff's story was contradicted in almost every detail. We are, however, taking his version of the surroundings and what happened.

It could not be pretended that in putting his leg on the rail he assumed this position by the express direction of the manager. Even if the latter did indicate that he was to seat himself on the guard rail, it does not follow that in taking the unusual position he did he was obeying the manager's specific direction. The usual way for persons to seat themselves is with feet on the floor. When plaintiff put his leg along the guard rail, he assumed the risk of this out-of-the-ordinary position just as he would have done had he sat in a similar way on a bench. If his foot had been on the floor where it belonged, he would not have been injured. He could not for his own comfort or for any other reason balance it longitudinally along the rail and visit defendant with responsibility for the result which flowed from this unexpected and unusual procedure, even if the manager did indicate the rail as the place for his seating. While he says the electric motor was not running, and we are accepting this statement at its full face value, he knew it was a machine with pulleys and a belt on it and he could not place himself in dangerous proximity to it, even when not running, and escape a charge of his own negligence, if it began to operate and because of his nearness to it injured him. In our view of the case, even if the manager indicated that he should sit on the rail, the way that he did so, convicts him of contributory negligence and he cannot recover. In principle the case is ruled by Edmundson v. Monongahela Light & Power Co., 223 Pa. 93, where a man went into defendant's plant amongst dangerous electric machinery to see its superintendent, who said to him, "Wait a minute," and while waiting one of the defendant's employees tried to pass

between the plaintiff and the superintendent, and, in order to afford more room, the plaintiff stepped backward into a machine from which he received the electric current which injured him. In that case we said that unless the superintendent had reason to believe that the plaintiff was under some disability or ignorance which exposed him to peculiar liability, no duty rested on the superintendent to caution him in regard to the machinery. "He had a right to assume, until otherwise informed, that the party......was able to take care of himself." See also Landis v. Curtis & Jones Co., 224 Pa. 400.

The judgment is reversed and is here entered for defendant non obstante veredicto.