SEBRING, Justice.
The plaintiffs below have appealed from a summary judgment entered on the pleadings and affidavits offered to support them.
The facts are that the plaintiff Rose V. Satin was a housewife. Her husband was an employee of the defendant, Hialeah Race Course. On February 14, 1950, Mrs. Satin visited the race course with the intention of betting on the races- and patronizing the various concessions. Instead of paying the admission required of the general public she obtained a pass from her husband, who, in turn, had been given the same by a member of the working press. This pass was one of several , issued by Hialeah Race *476 Coarse to members of the working press for the sole purpose of publicizing and reporting the events of the track. By means of such a pass the members of the press were able to gain entrance to the track without the payment of an admission fee or the federal tax levied on regular tickets issued to patrons and on other passes. The rules of the Hialeah Race Course and the State Racing Commission prohibit the use of such passes by any person not an actual member of the press. If unauthorized persons are discovered using the passes they are, under the rules, required to be ejected from the grounds.
Armed with this nontaxable working press pass, Mrs. Satin was admitted through a gate which she knew had been set apart for the use of owners, trainers, jockeys, jockey agents, track officials, members of the press and others concerned with the internal workings of the race course. Patrons purchasing general admission tickets or using taxable passes were not generally permitted through this gate because there was no provision made at this gate for a cashier to accept admission money, to collect the tax, or to make change. This was also apparent to her. After Mrs. Satin had gained entrance to this gate by exhibiting the pass to an attendant, she proceeded along a dirt and gravel path set aside for the use of the working personnel at the course. While walking this path, she stumbled and fell on a rock lying in the pathway and sustained injuries.
All parties agree that the sole question on this appeal is whether under this set of facts Mrs. Satin was a trespasser, a licensee, or a business invitee on the premises.
We think there can be but one answer to this question.
As we view the facts, the working press pass was issued by the defendant to members of the working press in order to induce them to attend the races for the purpose of publicizing the race track and the events held there. It was issued for this purpose and for no other; indeed, any other use of it was prohibited by rules of the defendant and of the State Racing Commission. The consent thus given to enter upon the premises of the defendant was a personal and restricted consent given only to those who desired to come upon the premises to exercise the privileges for which it was issued. •Mrs. Satin gained entrance to the enclosure by representing, in effect, that she was. entitled to make use of the pass for the purpose-for which it had been issued.
 In respect to such a situation the Restatement of the Law of Torts, section 168, states the rule as follows: “A conditional or restricted consent to enter land creates a privilege to do so only insofar as the condition or restriction is complied with.” As section 168 points out, “A consent is restricted if it is subject to provisions affecting its exercise * * *. Although ordinarily one to whom consent is given to enter land for a particular purpose may delegate his privilege to a servant or deputy, the license may be a purely personal one. In such case, if the licensee causes a third person to enter the land, both he and the third person are trespassers. * * * Illustrations. * * * 5. A for a nominal consideration gives B a personal license to hunt and fish on A’s land. B employs C to hunt for him. C’s entry on A’s land is a trespass.” See also 33 Am.Jur., Licenses, Section 95.
If Mrs. Satin was not a trespasser because of the fact that she was admitted to the enclosure by an attendant at the gate, then the most that can be said for her was that upon her entry into the enclosure she became a licensee and not an invitee as to whom the defendant would have owed the duty of exercising ordinary and .reasonable care. For there is nothing in the record to indicate that when the attendant let her in the gate he knew that she was anything other than what she impliedly represented herself to be, namely a member of the working press there on business. On the contrary, the record shows the rules of the tract to be that no one .other than workers around the track were to use such passes, and that if they were found doing so they would be ejected, from the track.
Even where a person is invited to a place by an employee who had no author *477 ity to give the invitation, and such person accepts, he becomes at most a mere licensee to whom the owner owes no greater duty than to avoid the infliction of wilful or wanton injury. Indianapolis Motor Speedway Co. v. Shoup, 88 Ind.App. 572, 165 N.E. 246; 65 C.J.S., Negligence, §§ 23 and 43(4) (e).
The judgment appealed from should be affirmed.
It is so ordered.
ROBERTS, C. J., and TERRELL and THOMAS, JJ., concur.