Shula, Appellant, v. Warren.

Argued March 17, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Christ. C. Walthour, Jr.,* with him *Kunkle & Trescher,* for appellant.

*A. C. Scales,* with him *Henry E. Shaw, Floyd R. Warren,* and *Scales and Shaw,* for appellees.

Opinion by Mr. Justice Benjamin R. Jones, April 20, 1959:

This is an appeal from the action of the court below in entering judgment n.o.v. against the appellant, William Shula, after a jury had returned a verdict in his favor in the amount of $20,579.72.

On the evening of August 26, 1952, appellant Shula, accompanied by his wife and two children, attended stock car races which were being held at the Rose Speedway in Penn Township, Westmoreland County. The Rose Speedway is an oval dirt track approximately a quarter of a mile in circumference. An area situated in the infield or center of the track, and designated as the "pit", was provided by appellees for the parking of vehicles which were entered in the races. This area was also used by the contestants for refueling and repairing their vehicles during the course of the races. The "pit" was unprotected from the track, except for barricades of automobile tires embedded in the ground placed on the curves at both ends of the area. Admission to the "pit" area was limited to the owners, drivers and mechanics of the vehicles, and to certain officials of the track engaged in conducting the races. A "pit" pass issued by an official of the track was required to gain admission to the "pit" area, and an employee of the track was stationed at the entrance to prevent the entry of unauthorized personnel.

After having paid the required admission fee, Shula, together with his wife and children, entered the grandstand which had been provided by the appellees to enable the spectators to view the races. After remaining in the grandstand for approximately ten or twenty minutes, Shula advised his wife that he was going to attempt to gain admission to the "pit" area. The appellant testified that he was told by the employee stationed at the entrance to the "pit" area that he could

not be admitted without a pass. This employee, whom he was unable to identify, obtained a pass from someone leaving the area, gave it to Shula, and permitted him to enter the "pit". Appellant admitted that he knew that only certain authorized individuals were permitted in the "pit" area, that a specific official was generally in charge of issuing the passes and that anyone to whom a pass was issued was required to register with the track. Appellant also admitted that he did not comply with any of these requirements and that he was not within the class of individuals authorized to be in that area. He further stated that, from his experience as an announcer and from viewing similar races on previous occasions, these precautions were taken and a grandstand was provided for spectators because of the dangers involved in being on or near the track while the races were being conducted.

After gaining admission to the "pit", appellant proceeded to the announcer's stand, which was located on an elevated platform in the center of the "pit", sat on the platform steps and watched approximately four or five races from this position. At some undisclosed point, appellant left the steps and proceeded to the edge of the "pit" near one of the curves, where, according to his witnesses, he was struck by a vehicle coming off the track. These witnesses testified that appellant was standing on the edge of the "pit" in a location where vehicles having mechanical difficulties pull off the track, although the driver of this particular vehicle apparently was not attempting to, and did not, enter the "pit" in a manner in which a vehicle leaving the track for mechanical repairs would ordinarily do.

The driver of the vehicle which struck Shula testified that his radiator was leaking and that his visibility was poor because of water and dust collecting on

the windshield. He stated that he was spinning and skidding as he came around the curve, that he was not attempting to enter the "pit", and that he was unable to state whether or not his vehicle or appellant were on or off the track when the accident occurred.

Appellant argues that the negligence of the appellees consisted in a failure to provide a fence, crash wall, or barricade to separate the "pit" from the track area. In so doing, appellant assumes that while in the "pit" area, he retained his status as a business visitor, and that appellees had the duty of exercising due care to avoid injuring him. Assuming *arguendo* that appellant's contention is correct, the court below still quite properly entered judgment n.o.v. in behalf of the appellees.[1]

---

[1] In so doing, we do not intend to sanction nor approve appellant's contention. In fact, a consideration of a case quite similar to the present would support a conclusion that appellant was a trespasser. In *Kelly v. Sportmen's Speedway*, 224 Miss. 632, 80 So. 2d 785, the decedent had entered the pit area, and while viewing stock car races, was struck and killed by a wheel which had broken off one of the cars. In sustaining a verdict for the defendant, the court stated: "If the decedent was not working for the defendants at the time of his injury, he was a mere spectator, and his status, when he entered the race track grounds, was that of an invitee. . . . So long as he remained in the area set apart for spectators, it was the duty of the appellees to provide the necessary safeguards to protect him from the hazards that could be reasonably anticipated, and to exercise due care to avoid injuring him. 52 Am. Jur., p. 314, Theaters, Shows, Exhibitions, etc., par. 69; Annotation 22 A.L.R. 657, 658; Annotation 37 A.L.R. 2d 391. But the pit area, according to the testimony, was an area set apart by the managers for the use of the owners and drivers of cars which were to participate in the races, and for the use of the mechanics employed to service the cars. Spectators were neither invited nor expected to enter the pit areas and were warned to stay out of the pit area. When the decedent entered the pit area, if he was not an employee of the corporation, he was a mere licensee or a trespasser. He could no longer claim the status of an in-

In *Rauch v. Pennsylvania Sports and Enterprises, Inc.*, 367 Pa. 632, 81 A. 2d 548, a patron of an ice skating rink, after having complained to the attendant of the conduct of other skaters, and after having removed her children from the ice because of this conduct, reentered the rink and was knocked down and injured by the action of one of these patrons. In entering judgment n.o.v., we stated: "When she reentered this area of danger, she deliberately exposed herself to the risk of injury happening in the very manner which

---

vitee. . . . The testimony showed that the pit area was a space set apart for the assemblage, storage and servicing of the stock cars which were to be entered in the races, and only the car owners, drivers and mechanics and other employees were entitled to enter the pit, and each of them was expected to obtain a pass before entering the pit. The decedent was not a car owner, driver or mechanic, and the jury had a right to believe from the evidence that he was not an employee of the corporation at the time he was injured and that he was in the pit without the appellees' permission. Under these circumstances we think that it cannot be said that there was no evidence in the record to support the appellees' claim that the decedent was a trespasser. 'Where a person while lawfully on the property of another or on public property as an invitee leaves that portion of the property on which he has been invited, or uses the property on a venture in his own interests and not within the scope of his invitation or purpose for which the property was reasonably intended, he loses his status as an invitee and becomes a trespasser. . . .'" Nor would the pass appellant indirectly obtained from someone leaving the area necessarily alter this determination. Appellant knew that only certain authorized individuals were permitted in the pit; that a specific official was generally in charge of issuing the pass; and that anyone to whom a pass was issued was required to register with the track. In order to sustain appellant's contention we would be required to hold that appellant was not a trespasser in spite of the fact that he entered the area on a pass *which he knew was not properly authorized and to which he knew he was not entitled.* See: *Satin et ux. v. Hialeah Race Course, Inc.*, 65 So. 2d 475 (Fla. Sup. Ct.) Under the facts of this case, however, it is unnecessary for us to rule on this question in order to sustain the action of the court below.

she had anticipated all evening, and of which she was so acutely aware that she had sent her children from the rink. *She had knowledge of the conditions, realized and voluntarily assumed the risk involved.*"[2] (Emphasis supplied)

In the present case, it is inconceivable that the appellant who had witnessed similar stock car races on previous occasions and who had been employed as an announcer at such races did not fully realize and appreciate the danger of being struck by one of the racing vehicles when he entered the "pit" area. He admitted that one of the attractions of stock car racing is the possibility of seeing vehicles collide or overturn, and that during the three or four years that he had been following this type of entertainment he had seen cars upset, crash together and slide off the track. With this experience Shula could easily foresee that these accidents would occur not only on the track proper, but also in areas adjacent to the track.

Appellant also admitted that because of this danger a grandstand is provided for spectators and that admission to the "pit" area is restricted to those individuals required to service the vehicles and conduct the races. He testified that he knew that he was not within this class, and that he had not complied with the track regulations for obtaining a pass. His only explanation for being in the area was that he wanted to be near the cars.

Not only did appellant enter the "pit" with full knowledge of the danger involved and that as a spectator he had no right to be in the area, *but he proceeded to the edge of the "pit" and stood at a point where vehicles with mechanical trouble would customarily leave the track, and it was at this point that he was*

---

[2] See also: *Szanborsky v. Armour & Co.*, 306 Pa. 525; 160 A. 219; *Dezelan v. Duquesne Light Co.*, 334 Pa. 246, 5 A. 2d 552; *Endorf v. Johnson*, 59 S.D. 549, 241 N.W. 519.

*struck.* Under the circumstances, the court below was fully justified in entering judgment for the appellees. The cases relied upon by appellant to sustain his position all deal with the adequacy of the protection provided by a track operator in an area which was specifically reserved for spectators and are completely inapposite to the present factual situation.[3]

Appellant, however, urges that he could not anticipate nor foresee the precise manner in which the accident occurred, namely, that a vehicle would enter the "pit" at high speed and partially out of control. Aside from the fact that one of the purposes of having a "pit" area is to provide a place into which such a vehicle may be directed rather than into the spectator area, we believe that *Haberlin v. Peninsula Celebration Association,* 156 Cal. App. 2d 404, 319 P. 2d 418, provides adequate refutation to this contention. There, a spectator at a rodeo was standing before a refreshment stand which had been placed in front of the participant's entrance to the track. The area was reserved for parade and rodeo participants and their horses, and spectators were expressly forbidden to enter the area. The individual involved had been permitted to enter the area in the morning to deliver trophies. He had returned to the rodeo later in the day with his wife and children, and, after having paid their admission and taken them to the grandstand, returned to the prohibited area to obtain refreshments. He knew that spectators were not permitted in this area, and that other refreshment stands had been provided for their use. He was familiar with horses and classified himself as something more than an amateur but not an expert horseman. While standing before the refreshment stand he was struck by an uncontrolled horse

---

[3] E.g., *Blake v. Fried,* 173 Pa. Superior Ct. 27, 95 A. 2d 360; *Kuemmel v. Vradenburg,* 239 S.W. 2d 869 (Tex. Civ. App.).

coming through the exit off the track. The Court pertinently stated: "Clearly plaintiff was an invitee. Thus defendant's duty towards him was to maintain the property in a reasonably safe condition and to exercise reasonable care to protect him from injury . . . But defendant was not required to warn plaintiff of obvious dangers, as the defendant was entitled to assume that plaintiff would perceive the obvious by use of his senses . . . . Both, of course, knew that in an area where horses and men intermingle there is always danger of a horse and man coming into contact with one another, but this danger was a necessary risk in order to provide the horsemen with the type of service they desired, and a risk which plaintiff with his background well could be found to have assumed. Refreshment stands for the general public protected from the horses were located elsewhere on the grounds. Plaintiff was fully aware of this fact and the purpose for which the restricted area was used. . . . While plaintiff knew that there were many horses in the immediate area and that he was standing where horses would sooner or later be going off the track, he perhaps did not know of the particular danger which occurred, namely, a horse coming off the track out of control at the noon hour. But that danger was equally unknown to defendant. . . . [T]he danger of injury to persons in the area from horses was as well known to plaintiff as to defendant, and if it be that there is a difference between injury by horses in the area and injury by a horse coming off the track, the danger of such an injury by a horse out of control was just as much unknown to defendant as to plaintiff."

Appellant finally contends that the court below improperly entered judgment n.o.v. because appellees' request for binding instructions was not presented within the required time. The Act of March 24, 1877, P. L.

38, §1, 12 PS §678 requires points for charge to be "handed to the court *before the close of the argument to the jury.*" (Emphasis supplied) Rule 226 of the Pa. Rules of Civil Procedure requires points for charge to be handed to the court *"before the closing addresses to the jury are begun."* (Emphasis supplied)

In the present case, the summations of counsel were concluded late in the afternoon on January 28, 1958. The court because of the lateness of the hour "felt that there was insufficient time to present the points or the law by either side, and under the circumstances asked both counsel for the plaintiff and counsel for the defendants to present their points or cases" on the following morning. Appellant argues that the conclusion of the summations is synonymous with the "close of the argument to the jury" and that the request for binding instructions was not timely.

We are in agreement with the court below and the appellees in that as long as the points are presented to the court prior to the commencement of the charge, they have been presented before the "close of the argument", and compliance has been had with the act. Nor is there any merit to appellant's contention that because the court below did not observe Rule 226, it was unable to enter judgment n.o.v. As we view Rule 226, it was inserted solely for the convenience of the court so that it might adequately consider the validity of the parties' points prior to the charge. Under the circumstances, we believe that it was properly within the discretion of the court to waive the requirement of Rule 226, if in its opinion, submission of the points prior to summations was unnecessary and neither impeded nor hindered the trial of the case.[4]

Judgment affirmed. Costs on appellant.

---

[4] See: 2 Anderson Pennsylvania Civil Practice 4.

438

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

William Shula paid an admission fee for himself, wife and two children to witness automobile races at the Rose Speedway in Penn Township, Westmoreland County. Desirous of enjoying a closer view of the racing cars, Shula obtained a pass which admitted him to the "pit" area, the inner hub of the circular track where racing cars were refueled or, if necessary, repaired while still in the race. At a crucial moment, a speeding car jolted from the track, struck him, and dragged him some 75 feet, inflicting serious injuries for which a jury awarded him damages in the sum of $20,579.72. This Court is affirming a judgment n.o.v. entered in the court below.

I would uphold the verdict of the jury. Shula was at a place where he had a right to be. The management accepted his money and then issued to him a pass admitting him to an area which held from 75 to 100 other people. Whether the management should have erected a fence, crash wall, or barricade to protect this large number of persons from cars which might leave the track was, as I see it, strictly a question of fact for the jury. The Majority Opinion says that Shula, by going into the pit, voluntarily assumed the risk of being injured. It is common knowledge that professional automobile racing is a sport fraught with danger to participants and even to spectators. This, however, does not mean that because spectators are willing to undergo the risk attendant upon watching this sport that those who make money from the spectacle should not afford them reasonable protection. The law does not favor invitation to disaster. If automobile-race-watching is so hazardous as to preclude safety measures it should be outlawed. But so long as it is permitted by the law, those who make a business of it should be required, to the extent that it is

possible, to prevent unnecessary death, mayhem, and physical harm.

The Majority Opinion cites the case of *Rauch v. Pennsylvania Sports and Enterprises, Inc.*, 367 Pa. 632, in support of its decision. In that case a paying patron of an ice skating rink was injured because of rowdyism on the ice which the management could have and should have stopped. It knew that unruly skaters were refusing to follow the flow and pattern of movement of the mass of the skaters. The guards knew of this dangerous conduct but did nothing to warn the bladed hoodlums to desist from their dangerous practice. In what I regard to be a wholly illogical and unjust decision this Court held that the plaintiff there, a Mrs. Rauch, was guilty of contributory negligence because, after paying her money to skate, and after telling the guards to make the unruly skaters behave, she did not herself leave the skating rink. She had the right to remain in the rink and there was a duty on the part of the management either to compel the sweatered ruffians to obey the rules of the rink or to expel them from the rink. But this Court held that because Mrs. Rauch insisted on her rights as a patron she was to be blamed. It is a strange decision which penalizes the law-abiding patron and excuses, as well as practically encourages, the rowdy violator of law, orderliness and decent behavior. I do not believe the *Rauch* decision to be good law, and if, the great honor conferred upon me by the people of Pennsylvania in electing me to this bench, had been accelerated by a year, the *Rauch* decision would not be a precedent today for the case at bar, because three of the Justices in the *Rauch* case dissented. One more vote, which I gladly would have contributed, would have retained for Mrs. Rauch the verdict which the jury awarded to her and to which she certainly was entitled.

Shula, the plaintiff in the instant case, was, like Mrs. Rauch, a business visitor and not a gratuitous invitee. His visit to the race track was financially beneficial to the proprietor-defendant. He thus was entitled to expect that the proprietor-defendant would exercise reasonable care to protect him from harm. Whether he did exercise that care or not was for the jury to determine.

It was argued by the defendant that Shula was in no better legal position to recover damages for injury than the baseball patron who is injured by a foul ball. The analogy is not valid. For a foul ball to leave the field and enter the grandstand is not to be unexpected. It is part of the game of baseball for foul balls to be struck. A foul ball is not an accident of the game, it is part of the routine of the contest. It is as much a part of the game as the dust raised by a player who slides into one of the bases. However, a car's leaving the track and plunging into an area occupied by paying customers is not a part of the routine of the race. It is a fortuitous occurrence, a departure from the routine. It is an accident and not a risk which the patron accepts as a *necessary* part of the entertainment. Whether such an accident is foreseeable and should be provided against, so far as the proprietor of the race track is concerned, is strictly a question of fact.

The jury in this case found that the defendant should have known that it could happen that an automobile would crash into the pit where scores of persons were legitimately watching the races and that, therefore, it should have provided for some kind of a barricade to protect them from injury. Accordingly the jury awarded the plaintiff $20,000 because of the failure of the defendant to measure up to responsibilities devolving upon race track owners. To the extent that the Majority decision invades the province of the jury

441

it leaves the track, I respectfully submit, of what should be, and is, acceptable tort law.