## Spanoudakis v. Aluminum Company of America

*Edward J. Balzarini and Suto, Power, Goldstein & Walsh,* for plaintiff.

*William H. Eckert and Eckert, Seamans & Cherin,* for defendant.

MONTGOMERY, J., December 9, 1959.—At the conclusion of plaintiff's case on liability a compulsory nonsuit was entered on defendant's motion. We have now before us motion ex parte plaintiff to remove same.

Plaintiff seeks damages for personal injuries sustained when he fell while painting an overhead girder used as a crane runway in defendant's plant at Cressona. On the day of the accident the plant was shut down and the runway was not in use. Plaintiff's employer, an experienced independent contractor, took advantage of the closed plant to perform this part of the general painting contract it had with defendant. The day of the accident was Saturday and was the first day work was done on the runways. During the preceding four days, other parts of the plant had been painted. Plaintiff was an experienced painter and undertook to perform his duties without instructions from either his own employer or anyone representing defendant, although Mr. Faros was the active foreman on the job for Universal and Mr. Rosenquest, also of Universal, the engineer over him.

The accident happened when plaintiff stepped on an eight inch air duct located about three feet below the girder he was painting. He stepped on the duct in order to paint the underside of the girder at that point. He had worked all day on the girder without the aid of ladders or scaffolding, although same were available, and without a belt or other safety device. He sat on and moved along the girder as he painted it.

The duct was eight inches in diameter, made of light metal which dented when stepped on, and was used to conduct air into a small furnace located under the girder. The duct was supported from the girder by an angle iron extending out therefrom and affixed to it by two spot welds. From the angle iron there was suspended a quarter inch rod which was connected to a collar which encircled the duct. The entire suspending structure was designed to support about 11 pounds of weight.

No one told plaintiff to use the ducts to support himself in performing his duties, and although he had

stood on similar ducts earlier that day, he noticed that they bent under his 156 pounds of weight, and he was aware of their construction and the method used in affixing them to the girder by welding or he could have seen same but he continued to make use of them.

The only evidence to attribute knowledge on the part of defendant that the ducts were being used to support the weight of the painters was given by Mr. Faros, the Universal foreman, who said he took orders from Mr. Lewin, whom he described as defendant's maintenance engineer, "boss over everybody," who looked at the job to see if it was all right "and at the same time was—over another construction, digging a big ditch there" . . . "25 feet away." Mr. Lewin gave instructions to paint in this area because the plant was down that day, and was about the plant and area that day, passing "lots of times" from his office to this excavating job. Faros also testified that he and his men stood on other pipes which were strong enough to hold one man, but not four, as had been attempted until he ordered them off. This was the same day as that on which the accident occurred.

This case was tried on the theory that defendant, as the possessor of the plant, permitted plaintiff as a business invitee to come upon the land when defendant knew, or should have known, a dangerous condition existed thereon, which doctrine is set forth in Restatement of Torts §343. This theory is not supported by the evidence because there is no evidence that a dangerous condition existed. The duct hanger was not defective and failed only because it was put to a use by plaintiff not intended by defendant, and one that was apparent to plaintiff as not intended. This case is clearly ruled on this point by Nettis v. General Tire Company of Philadelphia, Inc., 317 Pa. 204, wherein the Supreme Court stated: ". . . since the accident was the direct result of such an improper use, the defend-

ant, who had no reason to anticipate it, cannot be held for the resulting injury . . ." and "all the authorities agree that it is incumbent upon the owner of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably *safe* condition *for the contemplated uses thereof and the purposes for which the invitation was extended.*" (Italics supplied.)

Plaintiff attempts to avoid the application of this rule by showing that other painters on this day had used the ducts without injury, and that one of defendant's employes was in the area at various times during the day. It is admitted that no permission or direction was given by defendant to the painters to use same in doing their work, and there is a complete absence of testimony to show that the one employe of defendant in the plant that day knew they were being used. To have permitted the jury to infer that he should have seen the painters using them would have been error, because the prior use was only occasional since the ducts were constructed at intervals of 15 to 30 feet, and between them the painters were working on the girders. It was only to paint an occasional spot on the bottom of the girder that could be reached more easily by standing on the ducts that this means was adopted. The employe referred to was not supervising the painters but merely checked their work to see that it was done properly, and he had other things to do, some within his office and others without such as supervising the large excavation and overseeing all of the plant. Under these circumstances, it would be unreasonable and unjustified to charge him with notice that the ducts were being used for a purpose other than the use intended. There is nothing in the evidence to show that he or defendant should have contemplated that use.

Paull v. Marinpietri, 101 Pitts. L. J. 243, presents a situation somewhat similar to the present one. Therein, a roofer used roof drains to support his ladder in making roof repairs, and, because they carried weight not intended, they gave way. The owner was not advised that the roofer intended to make such use of the gutters, and a nonsuit was entered, the court saying that under the evidence ". . . there could be no implied representation upon the part of the defendant owners that the roof drains were capable of bearing the heavy burden that was placed upon them in this case."

We must conclude that there is no evidence of a violation by defendant of any duty owing to plaintiff and, therefore, no negligence shown in this case to justify its submission to a jury.

However, there are further reasons argued by defendant that would also justify the nonsuit entered by the trial judge. An owner is under no duty to warn a business visitor against a risk which the visitor can see (Grace v. Henry Disston & Sons, Inc., 369 Pa. 265), and in our present case plaintiff could readily see the entire suspension structure since he was painting it and had already observed in other cases how the ducts had bent under his weight. There was nothing latent about it. He saw that it was welded to the girder as he testified, but even though he had not admitted seeing it, he was in close proximity to it and could have seen it by merely looking. In either case, either he assumed the risk of resting his full weight on it or was contributorily negligent in doing so without taking necessary precautions: Brewster v. Morrone, 395 Pa. 642; Druding v. Philadelphia, 374 Pa. 202; Shula v. Warren, 395 Pa. 428; Mastrocinque v. McCann, 385 Pa. 33; Hotchkin v. Erdrich, 214 Pa. 460.

The motion to remove the nonsuit will be refused.

*Order*

And now, December 9, 1959, after argument before the court en banc and consideration of briefs, the motion ex parte plaintiff to remove the compulsory nonsuit heretofore entered is refused.