## O'Quendo v. Food Fair Stores, Inc.

*William Goldstein,* for plaintiffs.
*E. Paul Maschmeyer,* for defendant.

ANDERSON, *J.,* June 27, 1975—

### HISTORY

The above-captioned case is an action in trespass instituted by plaintiffs, Esteban and Fannie O'Quendo, husband and wife, as a result of injuries

sustained by Mrs. O'Quendo when she fell in a supermarket owned and operated by defendant, Food Fair Stores, Inc. (Food Fair).

The case was first tried in March 1972 before Honorable Norman Jenkins and a jury. The jury was unable to reach a unanimous decision.

The second trial of the case took place before the undersigned and a jury and concluded with a verdict for defendant on October 16, 1974. Plaintiffs filed a motion for a new trial, which was dismissed on April 23, 1975, following a hearing. On May 16, 1975, plaintiffs filed an appeal with the Superior Court.

## FACTS

As we are required to do, the testimony will be discussed in the light most favorable to defendant, the verdict winner: Tolentino v. Bailey, 230 Pa. Superior Ct. 8, 326 A. 2d 920 (1974).

Between 3:00 and 3:30 p.m. on December 16, 1960, Mrs. O'Quendo, who was then 52 years old, entered the Food Fair supermarket located at 27th Street and Girard Avenue, Philadelphia, Pa. There had been a heavy snowstorm several days previous and there was a substantial amount of snow on the ground. As a result, the area in the front of the store, which measured approximately 1,000 square feet and was bordered by the glass front of the store, the manager's office on the left, a row of check-out counters and cashiers and the entrance turnstile on the right, was wet and slushy, and had been in that condition throughout the day.

There were rubber mats at both the "in" and "out" doors, covering about 48 square feet. Mrs. O'Quendo was wearing high-heeled shoes. She noticed the wet condition of the floor when she en-

tered the market and walked across the area carefully. She shopped for about one hour, and, after paying for her purchases, was running to the "out" door to get a cab, when she slipped and fell. She was treated at Albert Einstein Medical Center, Northern Division, for a sprained left ankle. About a week later, she began to experience pain in her lower back. She had received treatment for the back pain up until the time of trial.

## DISCUSSION

The primary issue raised by the parties was contributory negligence. Although Mrs. O'Quendo testified that she had been wearing flat shoes and overshoes, and that when she slipped and fell she had been proceeding slowly and cautiously and had not run, the resolution of the factual dispute was for the jury. We cannot say that the jury erred in concluding that Mrs. O'Quendo ran across the wet and slushy floor in high-heeled shoes, with full knowledge of the dangerous condition of the floor and that she was therefore guilty of contributory negligence.

Turning now to allegations of trial error, plaintiffs contend that the court erred when it refused plaintiff's supplemental points for charge directed to the issues of concurrent causation and foreseeability of harm.

About 5:40 p.m. on October 15, 1974, the jury returned to the courtroom after four hours of deliberation and the following exchange occurred between the court and the jury foreman in the presence of counsel:

"THE FOREMAN: I have a hypothetical question. I don't know whether it's out of order. Are we allowed to ask you a question?

"THE COURT: You can ask it. I don't know if I could answer.

"THE FOREMAN: Maybe they will both object. These rulings are made with the understanding or the assumption at least, that the case is a clear-cut and dried thing, that the accident is the result of either negligence on the part of the defendant or the fault of the plaintiff.

"It is quite possible that the cause of the accident is 98 percent pure accident and one percent for the defendant and one percent for the plaintiff. Are we to consider only the two percent?"

Following that exchange, the court instructed the jury that the only issues they were to consider were whether defendant was negligent and whether plaintiff was contributorily negligent. The jury then returned to their deliberations. At about 6:22 p.m., no verdict having been reached, the members of the jury were permitted to return to their homes, under appropriate instructions, given in the presence of counsel.

The next morning, after the jury had resumed their deliberations, counsel for plaintiff presented three additional points for charge, which the court refused.

Pursuant to Pa.R.C.P. 226, points for charge shall be handed to the trial judge and to the opposing attorneys before the addresses to the jury are begun. The points in question were not handed to the court until the second day of the jury's deliberations and while the jury was still deliberating. Because the points were not submitted in a timely fashion, it was within the sound discretion of the court to refuse them: Shula v. Warren, 395 Pa. 428, 150 A. 2d 341 (1959); Commonwealth v. Sisak, 436 Pa. 262, 267 n. 3, 259 A. 2d 428 (1969); Fluke v.

Lang, 286 Pa. 31, 132 Atl. 800 (1926); Sgier v. Philadelphia & Reading Railway Co., 260 Pa. 343, 103 Atl. 730 (1918); Stapleton v. Horton, 183 Pa. Superior Ct. 198, 130 A. 2d 250 (1957).

Notwithstanding the above, the court will address itself to the merits of plaintiffs' arguments. The supplemental points submitted by plaintiffs are as follows:

"1. If a defendant's negligent conduct is a substantial factor in bringing about harm to the plaintiff, then the fact that the defendant neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent the defendant from being liable to the plaintiff: Vereb v. Markowitz, 379 Pa. 344, 108 A. 2d 774 (1954).

"2. If a defendant's conduct constitutes negligence, he is responsible for all unforeseen consequences thereof no matter how remote, which follow in a natural sequence of events: Hoover v. Sackett, 221 Pa. Superior Ct. 447, 292 A. 2d 461 (1972).

"3. There may be two or more substantial causes which combine to cause an event and, if the defendant's negligence was one of them, plaintiff may recover although no one cause standing alone would have caused the injury: Boushell v. J. H. Beers, Inc., 215 Pa. Superior Ct. 439, 258 A. 2d 682 (1969)."

The quotes from Vereb and Hoover are correct statements of the law. However, they relate to the issue of proximate cause, and are inapplicable to the case at bar. They stand for the proposition that if negligence of the defendant is shown, it is not necessary that a remote consequence in the chain of causation be foreseeable, in order for there to be liability on account of negligence. In the instant

case, the injury to Mrs. O'Quendo was foreseeable and was the direct result of the accumulation of water on the floor of the supermarket. Therefore, there was no question of foreseeability as it relates to proximate cause, and the requested charge would have placed before the jury an irrelevant issue. Moreover, the requested charge could have served to confuse the jury and could have materially prejudiced defendant's case. While foreseeability is not a necessary element in the determination of proximate cause, foreseeability of injury was a relevant factor in the jury's determination of whether Food Fair acted reasonably in maintaining its premises. The requested charge might have led the jury into erroneously believing that knowledge by Food Fair of the dangerous condition of the floor, whether actual or constructive, was not necessary for a finding of negligence.

The quote from Boushell, which deals with concurrent negligence, also relates to proximate cause. The cases cited by plaintiffs in their brief are not to the contrary: Pigg v. Brockman, 381 P. 2d 286, 291 (Idaho 1963); Palmer v. Brown, 273 P. 2d 306, 317 n. 7 (Cal. App. 1954). Again, however, in the instant case, the cause of the accident was the accumulation of water which defendant permitted to remain on its premises. The only other "substantial cause" of the accident was the fact that Mrs. O'Quendo allegedly ran across the floor. The proffered charge might well have misled the jury into believing that defendant was liable, notwithstanding plaintiff's own negligence, because the fact that she was running would not alone have produced the injury.

The thrust of the foreman's inquiry on October 15, 1974, was whether the jury was to consider the

fact that neither plaintiff nor defendant was responsible for the snowfall or the fact that the snow was tracked into the store. The court correctly answered the jury's question by advising them that the only issues they were to consider were the negligence of defendant and the contributory negligence of plaintiff. Counsel for both sides were then at liberty to request an additional charge, specifically relating to defendant's lack of responsibility for the wet condition of the floor initially, but detailing its obligation to act reasonably to clean the floor as the water and slush accumulated. No such point for charge was submitted and plaintiff thereby waived any objection predicated thereon. See Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 255, 322 A. 2d 114 (1974). The requests for charge submitted by plaintiff were not responsive to the question propounded by the jury foreman. They were not relevant to the case and could have served materially to mislead the jury. Those points were therefore denied.

Finally, plaintiff contends that the court committed reversible error when it advised the jury that there was no law requiring posting in supermarkets of signs warning of hazardous conditions. The following exchange occurred on October 16, 1974:

"THE COURT: What is the problem now?

"THE FOREMAN: Well, we have come to sort of a stand-still in the discussion, because we feel that it would clarify things a great deal if we knew the law in a certain instance. In fact, perhaps you could help us in that regard.

"THE COURT: What is the law that you desire to hear?

"THE FOREMAN: Is there a law in the State of

Pennsylvania requiring a public building or, specifically, a supermarket, to post a sign indicating hazardous conditions?

"THE COURT: I know of no such law. For your deliberations there is no such law. Does counsel know of any such law?

"MR. GOLDSTEIN: No, sir, Your Honor.

"MR. MASCHMEYER: No, sir, I do not.

"THE COURT: There is no such law.

"MR. GOLDSTEIN: May we see Your Honor at side bar?"

(The following takes place at side bar:)

"MR. GOLDSTEIN: Though there is no statute on that point, there is a question of more or less case law that in appropriate circumstances a failure to do so constitutes negligence.

"I think by saying 'no law' the jury could infer that under no circumstances could it be negligent not to do so.

"THE COURT: All right."

(End of side bar.) (The following resumes before the jury:)

"THE COURT: Ladies and gentlemen of the jury, as I have indicated to you, there is no statute requiring it. However, you may consider that as an element in your deliberations. But, there is no law requiring it.

"In other words, in dealing with the question of whether or not the defendant was negligent, you may consider that as an element in arriving at your conclusion. But, that's not to tell you that you should or should not arrive at a conclusion of negligence. That's merely one of the elements which you may take into consideration in your deliberations.

"Please return.

"THE FOREMAN: There is no such law."

(The following takes place at side bar:)

"MR. GOLDSTEIN: Your Honor, I feel it was not as clear as I wanted it to be. I take exception.

"THE COURT: Exception is now on the record."

The court's statements to the jury were not incorrect. There is no statutory duty imposed on supermarkets to post notices of hazardous conditions. However, while the lack of a warning sign does not, as a matter of law, convict defendant of negligence (see Hill v. Richards, 406 Pa. 452, 178 A. 2d 705 (1962)), and while the absence of a statute requiring a warning does not, as a matter of law, absolve defendant of liability (Armit v. Loveland, 115 F. 2d 308 (3d Cir., 1940)); both factors ordinarily would have been relevant to the jury's determination of defendant's negligence, and the court so charged. A review of the testimony leads us to conclude, however, that no charge on the issue of the common-law duty to post warning signs was required at all.

While, under the circumstances of this case, the failure to post a sign may have supported a finding of negligence, that particular negligence would not have rendered defendant liable because, *as a matter of law*, it was not the proximate cause of Mrs. O'Quendo's injuries. Plaintiff testified that, when she entered the store, she noticed that the floor was wet and slick in the doorway and that she walked carefully to the turnstiles. She also said that she observed that the floor was very wet from the door to the manager's office, which area includes the spot where she fell. Mrs. O'Quendo further testified that, after she had completed her shopping, when she turned to go out, she knew that the floor was

wet and was concerned enough to walk carefully. Since Mrs. O'Quendo testified that she was fully aware of the slippery condition of the floor and proceeded carefully on account thereof, the lack of a warning sign could not have, in any way, been the cause of her fall: Hill v. Richards, supra. Therefore, any lack of clarity in the court's charge constituted harmless error.

For the above reasons, plaintiffs' motion for a new trial was denied.